## SCHUMAKER *vs.* SCHMIDT et al.

[BILL IN EQUITY TO ESTABLISH A WRITTEN COMPACT, AND TO HAVE A WILL SUBSEQUENTLY MADE, BY ONE OF THE PARTIES TO THE COMPACT, DECLARED VOID, &c.]

1. *Will, what instrument is; how revocable.*—A writing purporting to be a will, executed by two persons, making a posthumous disposition of the property of the one who may first die, in favor of the other, and requiring the survivor to pay the expenses of the last sickness and burial of the decedent, and such debts as may be proved against his estate, is the separate will of the first decedent, and is revocable as other wills are.

2. *Joint will; how will operate.*—Two or more persons may execute a joint will, which will operate as if executed separately by each ; and will be entitled to and require a separate probate upon the death of each, as his will. But if the will so provides, and the disposition made of the property requires it, the probate should be delayed until the death of both or all the testators.

3. *Mutual wills, how may sometimes be enforced.*—Mutual wills, duly executed, may, after the death of either party, in some cases be enforced in equity as a compact.

APPEAL from the Chancery Court of Mobile.

Heard before Hon. A. C. FELDER.

George Schumaker, the appellant, and Edward Auerback, residing in Mobile, executed, on the 5th of November, 1864, the following writing : " Know all men by these presents, that we, George Schumaker and Edward Auerback, of the city of Mobile, State of Alabama, being of sound mind and memory, considering the uncertainty of life, do make and· declare this, our last will and testament. First, we being friends of many years standing, and in consideration of that mutual friendship and esteem for each other, do mutually promise that, in the event of the death of either one of us, the survivor shall, after such death, pay all the expenses of sickness and burial, and whatever expenses of the estate may be due by proof. Second, the survivor shall enter into possession of the estate of the other, and shall hold it for his own sole use and benefit, and this is

the mutual agreement of us. Whereof, in testimony, we have to this our last will and testament, contained on one sheet of paper, subscribed our names and set our seals. We have our names and affixed our seals, this 5th day of November, 1864.

(Signed)           " GEORGE SCHUMAKER, [seal.]
                   " E. AUERBACK,       [seal.]"

This instrument was attested as follows :

" Signed, sealed and declared and published by the said George Schumaker and Edward Auerback to be their last will and testament, in presence of us, who, at their request, and in their presence, and in presence of each other, have subscribed our names as witnesses hereto.

(Signed)           " R. F. STARR, No. 58 Conti street.
                   " THO. LANGAN, No. 8 South Royal st."

It was placed in the hands of S. Festorazzi, of Mobile, for safe keeping by both parties.

On the 27th of August, 1866, Auerback made a last will and testament, in which he devised and bequeathed all of his real estate to Christian Schmidt, and all of his personal property to Auguste Egloffe, and appointed Schmidt his executor. He died soon afterwards, and this will was admitted to probate on the 7th of January, 1867.

The appellant's bill, filed on the day the will was proved, sought to establish the first instrument as a compact between him and Auerback, and to have the will declared void, or, if deemed by the court material, to have it proved in the chancery court, and decreed to be subordinate to the complainant's rights, with all the rights or powers passing under it, held in trust for him.

On the final hearing of the cause, on the pleading and proof, the bill was dismissed. For error, alleged in this decree, the appeal was taken.

ROBERT H. SMITH, for appellant.—The views of appellant, as presented by his bill, are fully exemplified by the note of Mr. Hargrave, appended to *Walpole v. Orford*, 3 Vesey, 402; 2 Hargrave's Juridical Arguments, 116; *Dufour v.*

*Pereira*, 1 Dickens' Ch. Rep. 419; and other authorities cited *post*.

Appellant contends that—

1st. The paper on which the bill is filed, is not and can not be a will;

2d. It is a compact which the chancery court will enforce; and

3d. This is so, even though it might be admitted to probate as a will at law, and in the probate court.

A will must be ambulatory, and its taking effect as a will must solely depend upon the death of the party whose will it is.

The paper can not be the will of both. If of either, it can only be the will of him *who died first*. Had complainant died first, it would (on the supposition of its being a will) have been his will. Auerback having died first, it is his will—not because of and upon his death, but because Schumaker has survived him. The case, therefore, is much stronger against its being a will and in favor of its being a contract, than that of two persons uniting in a joint or common disposition of their joint or several property to third persons.

It is not supposed that any case can be found where a paper has been upheld as a will, where its effect as such is dependent on the life or death of some other person than the testator. Particular devises and legacies may take effect or not on survivorship, but no paper can be a will, the validity of which depends on the death of some other person than the maker.

Upon the supposition that the paper is a will, it would, translated, read thus:

If Schumaker survives Auerback, this is Auerback's will; but if Auerback survives Schumaker, it is Schumaker's will.

The paper is not ambulatory. It is not revocable by either, because it contains covenants which are not dependent on any disposition of property, and which rests on valuable consideration. The clause for the payment of funeral expenses and debts, is a personal undertaking, and is to be performed without regard to whether deceased leaves suffi-

Schumaker v. Schmidt et al.

cient, or indeed any estate.  The agreements throughout are, and are called, mutual agreements.  It is the simple case of a contract resting on the consideration of mutual undertakings.

It is not revocable by one, because it is the paper *of two*, each providing for its operation, (as before shown,) on the contingency of survivorship.  The whole matter spends its force by the combined facts of *death and survivorship*.  The paper is made on consideration, contains mutual promises and mutual undertakings, and creates rights, all of which are incompatible with the ideas of revocation.

The acts of the parties show that they did not intend the paper should be revocable by either.  It was made as a compact—it was placed in the hands of a third person.  The parties thereby prevented themselves from revoking it by one of the means provided by the statutes of Alabama for revoking wills—by cancellation or destruction.—Rev. Code, § 1932.

That the paper can not be a will, is shown by the following authorities: Williams' Ex'rs, 104, and notes; *ib.* 10; 1 Lomax Ex'rs. 105, 106; *ib.* 3; *Hobson v. Blackburn*, 1 Addams, 274, in 2 Eng. Ecl. R., top p. 115; *Clayton v. Livermore*, 2 Dev. & Bat. (Law,) 558; 2 Hargraves' Jurid. Arguments, 272; *Walker v. Walker*, 14 Critchfield's Ohio St. Rep. 157.

The discussion in 2 Dev. & Bat. is referred to as an able examination of the question, and as showing that the paper is not a will and *is a contract;* and although the devises are not of the same character as in the paper under consideration, the fact that *the survivorship* is the matter on which the paper could operate, regarded as a will, makes more strongly against its being a will.

That a man may, by contract, stipulate for a specific disposition of his property at his death, appears very clear and simple.  What prevents my conveying all I have, reserving a life estate?—See *Izard v. Middleton*, 1 Des. 116; *Rivers v. Rivers*, 3 Des. 190; *Nelson v. Nelson*, 1 Wash. (Va.) 136, and authorities *supra ; Wilkes v. Greer et al.*, 14 Ala. 437; *Scott v. Baker*, 13 Ala. 182.

30

I know of no law that forbids a man from making a contract which prevents his disposing of his property in a given manner, by will.

That the paper is, in equity, *a contract*, is shown by the admirable opinion of Judge Gaston, in 2 Dev. & Bat. 558; and by 14 Ohio, 157, and by 14 Ohio, *(supra,)* 173, 174.

In the language of Brickenhoff, J., in 14 Ohio, 173, 174, " such wills as this include something of the nature of a compact. Each provision must be made in view of, or in consideration of, and be influenced by, every other provision of the will."—*Dufour v. Pereira,* 1 Dickens' Ch. R. 410; 2 Hargraves' Jurid. Arguments, 116; see, also, Hargraves' note to *Walpole v. Orford,* 3 Vesey, 402. And this, though the paper might be admitted to probate in the law court as a will. Indeed, the dissenting opinion of Mr. Justice Daniel, in 2 Dev. & Bat., is predicated upon the idea, that the admission of the paper to probate *as a will,* in no wise interferes with the doctrine of *Dufour v. Pereira,* and he insists that the very paper there *enforced as a compact,* had been admitted to probate *as a will,* and the note of Mr. Hargrave, appended to *Walpole v. Orford,* (3 Vesey, 402,) applies to a subsequent will that the court had decided was to be probated. His position is, that though the codicil revived the old will as a will, and thus destroyed the mutual will, yet if the bill had been properly framed, equity would have held the executors under the probated will as trustees for the performance of *covenants* in the mutual will.

The mutual will in *Walpole v. Orford* would have been good as a will, if not revoked by a subsequent one—for it was, on its face, a will—but in fact and by reason of other proof, it could be made to appear that it was mutual and on a compact, and that astute juridical scholar, Mr. Hargrave, evidently thought that the doctrine of *Dufour v. Pereira* applied to the case, had the bill been framed to meet this view.

B. LABUZAN, and DARGAN & TAYLOR, *contra.*—Is the instrument set up in complainant's bill a will or a contract? We contend—

First—That it is nothing more than the will of each party in favor of the other. The phraseology of the instrument shows it to be a will. The language is, "That we, being of sound mind and memory, considering the uncertainty of life, do make and declare this our last will and testament." The attestation shows it. It recites that the instrument was signed, sealed and delivered as the last will and testament of the parties in the presence of the witnesses. It is attested in the mode prescribed by law, and takes effect upon such estate only as they may leave at their death. The evidence shows that it never was considered as anything else but their mutual wills in favor of each other. The situation and circumstances of the parties repels the idea that they intended to make a contract binding and irrevocable between them.—*Ex parte Day*, 1 Bradford's Surrogate (N. Y.) Rep. 476.

Lastly, it is shown to be a will; it is not to take effect until after death.—*Kinnebrew's Distributees v. Kinnebrew's Adm'rs*, 35 Ala. 640, and authorities there cited.

There is an expression in the instrument laid hold of by appellant's counsel, and which he contends evinces a contract. It is this, viz: "That the survivor shall pay the debts and funeral expenses of the party who dies first." This is nothing more than the law would require and compel each of them to do out of the property of the decedent.

Second—We contend that if the instrument is regarded as a contract, it is void—1st, because it is without consideration, either good or valuable in law; 2d, because it tends to fraud; 3d, because it is in the nature of a gambling transaction; 4th, because it is contrary to public policy. It is without any valuable consideration. Neither party paid any money to the other in consideration of which they were to make their wills in favor of each other. There was no debt due by one to the other, or services performed by one for the other, as a consideration for making their wills. It is true that each is required to pay the debts and funeral expenses of the one who dies first; but this is a duty which would be exacted by law of any one who administers on the property of the decedent.

There is not even what the law deems a good consider-

ation. The consideration expressed in the instrument, is the mutual friendship and esteem the parties have for each other. In *Kinnbrew's Distributees v. Kinnebrew's Admr's*, it is held that affection of a grandfather for his grand-child, is not a good consideration.—*Kinnebrew's Distributees v. Kinnebrew's Adm'rs*, 35 Ala. 637.

It tends to fraud. Wills are not required to be recorded until after probate. If it is held, as contended for by appellants, that the property of each is bound by the will from the time of its execution, and can not be alienated or encumbered, then it operates a fraud on creditors, because they could have no notice of the will. If, on the contrary, it be held that either may encumber, alienate or squander his property, then it is in fraud of the contract.—See note A to case of *Walpole v. Orford*, 419, side page. It is in the nature of a gambling transaction. It is a wager as to which will outlive the other. It is contrary to public policy. Suppose Auerback had married after executing this instrument, and had children. In this event, the marriage and birth of children would, by our statute, be a revocation, if the instrument be held a will; but if held a contract and irrevocable, the property would be bound and held by the contract, and the children in the case supposed, would be excluded from all participation in the property. If it is a contract for one purpose it is a contract for all purposes, and binding as well as if there was marriage and issue as if there were not. It can not be a contract in one aspect and for one purpose, and a will in another aspect and for another purpose. To hold that children could be thus debarred from participation in the property of the parent, and thrown penniless upon the world, would be repugnant to justice, humanity and right. Again, can an instrument be at the same time a will and a contract? A contract is defined to be the meeting of *two* minds upon a proposition. A will is the expressed desire of a single person as to the disposition of his property after death.

As to the equity of the bill. It is a bill for the specific performance of an alleged compact. The right to call upon a court of equity for the specific performance of a contract between parties is a mutual right, and is a matter not im-

perative upon the court to grant, but, in the sound discretion of the court to grant, or refuse, under all the circumstances of the case. The right being mutual between the parties, those standing in the place of the parties have the same right as the parties themselves.—2 Story's Eq. Jurisprudence, p. 110.

Now suppose Auerback, at his death, instead of leaving property unencumbered, had owed debts to that amount over and above the value of his property, could Auerback's creditors have filed a bill in chancery to compel Schumaker to take Auerback's property and pay his debts beyond the property left? We think not, because it would be inequitable. If, then, Auerback had left at his death, more debts than his property would pay, and Schumaker could not be compelled to take the property under this instrument, and pay all of Auerback's debts, it would be inequitable and unjust to allow him to take the property, because, at Auerback's death, it was clear of all incumbrance. To do this would be to destroy any mutuality of obligation.

It would result in this, viz : That it would leave to Schumaker the right to take the property if unencumbered, or to reject it if encumbered.

The authorities cited by appellant to show that this instrument is a compact to make mutual wills, do not sustain the proposition. There is but one case to be found in all the books where it has been expressly held, that where parties enter into a contract to make mutual wills, that a court of equity will enforce such an agreement. That is the case of *Dufour v. Pereira*, 1 Dickens' Ch. Rep., and is totally variant from the case now under consideration. We have not been able, after the most diligent search, to find this case. The notices we have of it, are contained in the following works : Williams on Exr's, chap. 3, Title, Revocation of Wills of Personality, vol. 1, p. 71—2d American from 2d London edition, and the case of *Lord Walpole v. Lord Orford*, 3 Vesey, 402.

The marked and prominent distinction between this case, and the one under consideration, is this : That in the case of *Dufour v. Pereira*, the mutual will was not revoked, or attempted to be revoked during the lives of the parties,

and not until long after the death of the husband, and after the wife had proven his part of the mutual will, and enjoyed the property of the husband under it, for seventeen years. Even then, there was no effort to enforce a performance of her part of the mutual will between herself and her husband, but simply to prevent her from interfering with his will as to other provisions contained in it.

In the case now before the court, the mutual will was revoked by Auerback, by his subsequent will during the life of himself and Schumaker. We assert, without fear of contradiction, that there is no case to be found in any of the books which decides, that where parties make mutual wills in favor of each other, and during the lives of the parties one of them revokes his will, that he has not the right to do so, with or without notice to the other. If there is no revocation of the mutual will by either of the parties, by making a subsequent will or in any other mode, perhaps it may be that this binds the survivor. But that is not the case here. It is argued and contended by appellant, that neither party can revoke during life, without notice to the other. What sort of a contract is that, I ask, which one party can annul at his pleasure, without the assent of the other, upon bare notice to him that he intends to do so. A contract is a mutual agreement and mutually binding, and neither party to it can, at his own mere will and pleasure, abrogate it. It would appear from the remarks of Mansfield, that in the case of *Dufour v. Pereira,* there was an express covenant between the parties not to revoke.—See *Walpole v. Orford,* side page 415. But if there was no such covenant, and the covenant had to be implied, the court would not do so, as it would be " big with fraud." See, also, the remarks of the attorney-general, same case, side page 414, saying, " if he was not at liberty to revoke without notice, admits he had power to revoke ; then how is it proved he could not without notice ? *That is a most important term in the agreement.*" In the case now before the court, *there is no covenant not to revoke, and it can not be implied.* The attorney-general further says—same case and page—" if it had been by deed, no professional man would have permitted it to be done without a power of revocation

inserted : if by will, it would not be inserted, because the law gives a power of revocation." See, also, the remarks of the chancellor, same case, side page 419, to the same effect. We do not impugn the correctness of the decision in *Dufour v. Pereira*, but deny that (even upon the imperfect report of it in Williams on Executors, ante, and in the case of Walpole and Orford,) it has any application to this case. The decision has never been followed up in any adjudged case, and the courts, since that time, have manifested reluctance to bring any case within the rule established by it. The facts in that case might warrant such a decision ; the facts in this do not.

In opposition to the authorites cited by appellant, and to show that the instrument is *a will and revocable*, and *not a contract and irrevocable*, we refer, in addition to our argument, to the following authorities : 35 Ala. Rep. 640 ; 19 *ib.* 59 ; 2 *ib.* 152 ; 1 Bradford's N. Y. Surrogate R. 476 ; *Walker v. Walker*, 14 Ohio R. 157 ; 28 Georgia Rep. 98 ; 26 Conn. Rep. 452 ; and would add, that had not the instrument been revoked, it might have been probated in this county as a will, and that even if it is not probated as a will, it is nothing. Failing to be a will, does not necessarily make it a compact. It can not be a compact and irrevocable, because there was no valuable and necessarily mutual consideration ; because, it was concerning no subject matter *in esse.* It was simply an attempt to convey such property as might be in existence at the death of the parties, and because it was a chance bargain against public policy, and which can not be enforced in equity.—35 Ala. Rep. 640 ; 1 Swift's Digest, 186, 189, 193 ; 1 Dessaseure Rep. 121 ; 37 Ala. Rep. 535.


B. F. SAFFOLD, J.—Was the writing between Schumaker and Auerback a compact, and not a will, or is it a will containing a compact irrevocable after its execution, or a will simply, and, therefore, revocable by a subsequent one ?

The intention of the maker is the guide in construing all conveyances of property. This intention must be discovered mainly from the instrument itself, and parol testi-

mony can only be received to explain ambiguities. A writing may admit of construction, either as a deed or as a will. In such a case that interpretation should be given to it which will effect the will of the maker, and best preserve the rights of other contracting parties. So controlling is this rule, that in *Golding v. Golding*, 24 Ala. 122, an instrument conveying a posthumous interest was regarded a deed, because it could not operate as a will for want of the requisite number of witnesses ; and in *Kinnebrew's Distr's v. Kinnebrew's Adm'rs*, 35 Ala. 628, a gift of money at the death of the donor was construed to be a will, because, being a voluntary executory trust, it would not, as a provision of an instrument operative *inter vivos*, be enforced by a court of equity.

In this case, the inducement to the writing is stated to be the long friendship, and mutual esteem of the parties. They say it is their mutual agreement, and declare that it is their last will and testament. The survivor, after the death of the other, is to pay all the expenses of his sickness and burial, and whatever debts may be established against his estate by proof. He is also to take possession of the estate, and hold it for his own sole use and benefit. They subscribe their names, and affix their seals to it as their last will and testament. The witnesses attest that they so declared and published it to them, and requested them to subscribe their names as witnesses to that effect, which they did in their presence, and in the presence of each other. The disposition of the property is posthumous entirely. No present interest is granted, and no consideration present, or within a reasonable or given time is required. The depositions of the witnesses, though somewhat variant in characterizing it, are not so precise and authoritative as the evidence derivable from the paper itself. No questions were asked them tending to a discrimination between a deed and a will.

Viewed as a contract, the most favorable interpretation of it would be, that each party, by a joint instrument, created in his own property a life estate to himself, with remainder to the other if he survived. The embarrassments attaching to property in this condition, and the evil

tendency of secret executory agreements, not to be revealed perhaps, until death had cut off the victim of fraud, make us averse to pronounce this a compact, in the absence of express declaration to that effect, or unavoidable deduction from its terms.

In *Habergham v. Vincent*, 2 Vesey, 230, Mr. Justice Buller said : " The cases have established that an instrument in any form, whether a deed poll, or indenture, if the obvious purpose is not to take place till after the death of the person making it, shall operate as a will. The cases for that are both at law and in equity ; and in one of them there were express words of immediate grant, and a consideration to support it as a grant ; but as upon the whole the intention was it should have a future operation after death, it was considered as a will." Of all instruments a will is least governed by form. No matter how inartificial the expression, if the testamentary disposition of the maker is disclosed, it will control any contrary title or designation he may have given to it.—Jarman on Wills, (3d Am. ed. marg. p. 12.)

The result of what has been said is, that the instrument in question must be treated as a will, unless some consideration other than its testamentary character forbids us to do so. It is executed by two persons jointly, and disposes of the separate property of each in favor of the other. The law respecting joint, or mutual wills, is in much confusion. It is broadly asserted, by some authors, that they are unknown to the testamentary law of England. But this assertion is not supported by the cases whence it is derived. In *Hobson v. Blackburn*, 1 Adams' Eccl. R. 274, the joint will, the probate of which as the will of the sister, was rejected on the ground evidently of the irrevocability, had before been admitted to probate as the will of the brother. In *Dufour v. Pereira*, 1 Dick. 419, the wife was held to have bound her assets to make good all the bequests of the mutual will of herself and her husband, because she had proved it as the will of her husband, and had accepted and enjoyed, for a number of years, the bequests in her favor. There was no probate of it as her will ; but, on the contrary, a subsequent will made by her

was proved. The case of *Walpole v. Orford*, 3 Vesey, 402, is scarcely an authority. The subject is discussed, but no decision is made. The American decisions by no means accord. In *Clayton v. Liverman*, 2 Dev. and Bat. (N. C.) R. 558, it was held that a testamentary paper, executed by two persons, could not be proved as a joint or mutual will, nor could it be proved as the separate will of either, because it purported to be joint, and also implied an agreement. But on this latter proposition Judge Daniel dissented, insisting that so far as related to the portion of property belonging to each, it was a separate testament, and revocable, there being no evidence of any agreement to the contrary. In *Walker v. Walker*, 14 Critch. Ohio State Rep. 157, it was held that, "where a husband and wife, each being the separate owner of property, join in the execution of an instrument in the form of a will, and' treating the separate property of each as a joint fund, bequeathed legacies and devised lands to divers persons, the same can not be admitted to probate as the joint will of both parties, nor as the separate will of either." The reason upon which this decision mainly rests is that it contravenes the policy of the law in respect to the revocable nature of wills. Two out of five judges dissented. In *Ex parte Day*, 1 Bradford's Surrogate R. (N. Y.) 476, the proposition was broadly maintained that a joint or mutual will is valid, and may be admitted to probate on the decease of either of the parties as his will. This case was one in which a will executed by husband and wife was propounded for probate. It is represented meagerly in the last clause, as "a testamentary disposition by the decedent's wife of some property belonging to her in her own right," and was proved as the will of the husband. In *Lewis v. Scofield*, 26 Conn. R. 452, and *Evans v. Smith*, 28 Ga. R., mutual wills, as distinguished from joint wills, as where two persons join in the execution of one testamentary instrument, declaring that the survivor shall, after the death of the other, have his property, have been upheld, because, though joint in form, it is several in operation and effect, there being but one giver and one taker, and in

substance and effect, but the one testament of the first decedent.

The best summary of the law, on this interesting and somewhat intangible subject, as derived from the authorities entitled to the greatest consideration, is that two or more persons may execute a joint will, which will operate as if executed separately by each, and will be entitled to, and will require a separate probate upon the decease of each, as his will. But if the will so provides, and the disposition of the property requires it, the probate should be delayed until the death of both, or all, of the testators. The assertion in Redfield on the Law of Wills, p. 183, § 25, that it is settled in the court of chancery, by a great number of decisions, that mutual wills, duly executed, become irrevocable in equity, after the death of either party, is not sustained to that extent by the authorities there cited. It needs the limitation that, under the contingency stated, they may be in some cases enforced, in equity, as a compact.

The will under consideration, though made by two, is not a joint will, because by its terms it can be only the will of him who dies first. The survivor is to take all the property of the other, and no further disposition is made. Though classed under the general denomination of mutual wills, it is not in fact such, because the term implies the will of two persons. It is, therefore, the separate will of the first decedent.

Is there any thing of the essence of a compact in it which should interfere with its revocability? Can he who dies first, or the survivor, be injured if it be deemed revocable. The first decedent, while he lives, can receive nothing from the other, and his death concludes the operation of the instrument as to any reciprocal or hoped for advantage. On the other hand, if he revokes it, and makes other disposition of his property, the survivor is not injured. This would be the case if only a moment intervened between their deaths, or if they died at the same instant.

The suggestions in the English cases that notice of the purpose to revoke should be given to the other parties,

does not seem to present a sufficient point of support for the power of revocation, which ought rather to be regarded as the essence of a will.

The admission in evidence of the deposition of Egloffe has not been discussed by the appellant's counsel, and is not deemed material in the decision of this cause.

No other issue respecting the validity of the last will of the decedent, Auerback, is made than that herein considered.

The decree is affirmed.