## Nelson et al. v. Nelson et al.

(Decided June 10, 1930.)

190

CHENAULT HUGUELY, HENRY JACKSON, C. C. BAGBY and E. C. NEWLIN, JR., for appellants.

N. D. RODES, E. V. PURYEAR, K. S. ALCORN and ROBINSON & KAUFFMAN for appellees.

OPINION OF THE COURT BY JUDGE LOGAN—Affirming.

Lucian Quisenberry Nelson executed the following paper:

"Danville, Ky., Sept. 29, 1926.—L. Q. Nelson, Dentist, Danville, Kentucky.—'Until *I can have my will written* the following are my wishes in regard to my estate. I want the Fidelity and Columbia Trust Co., of Louisville, Ky., to take entire charge of all my property and hold same in trust for the life of my wife Nellie Cooke Nelson, the income to be paid to her except $25,000 twenty-five thousand dollars which is to be paid to her upon my death. Upon death of my wife I desire 50,000 Fifty thousand to be retained in trust and income to be paid to Society for prevention of cruelty to animals and agent appointed to reside in Danville, Ky. and see that animals are treated humanely.

"The above mentioned trust Co. to act as trustee of this fund. The income from the rest of my estate upon death of my wife Nellie Nelson be paid to Alfred Brierly Nelson, son of my Brother E. B. Nelson, if he should die without heirs his part of estate to revert to fund left for the prevention of cruelty to animals. I desire the entire interest

amount left to the Society for prevention of cruelty to animals of Louisville, Ky. and income spent in Danville Ky. and Boyle Co.

"Lucian Quisenberry Nelson."

He was a dentist, and he died in Danville, Ky., in October, 1927. The appellee, Nellie C. Nelson, is his wife. They had no children. The appellant Edward B. Nelson is a brother, and the appellant Bessie Nelson is a sister. Edward B. Nelson is married and has three children, one of whom is mentioned in the paper copied above. Bessie Nelson is single. The paper in controversy was written by Nelson with his own hand on a sheet of his professional stationery. It was not delivered to any one, but was kept with his papers in his office, and was there discovered after his death. He lived about a year after the paper was executed.

The case was practiced as an ordinary will contest, with the additional contention that the paper admitted to probate was not written with testamentary intent, and that it is, therefore, not a will, and because it is not a will there should have been an instruction directing the jury to return a verdict in favor of appellants. That seems to be the chief ground relied on by appellants for a reversal of the judgment below, although it is urged that the court erred to the prejudice of appellants in refusing to give an instruction offered by them, and that the court erred in the admission of testimony offered by appellees and by refusing to admit testimony offered by appellants.

Counsel for appellants, in their able and exhaustive brief, state the law to be that a paper purporting to be a will for testamentary disposition of property must be written with testamentary intent animo testandi, and that such paper must clearly show, upon its face, that the testator intended to dispose of his property by the paper alone; that the paper must be the vehicle, or medium, of making the intention effective, and that it must stand or fall by its own strength or weakness, and that no extrinsic evidence or any presumptions can be mustered to breathe life into an instrument fatally defective. We see no reason to question the accuracy of that statement of the law. They seem to be bulwarked with authorities on that point from Blackstone down to the present time. The essence of a testamentary disposition of property is that it must be a declaration of the testa-

tor's intention as to what shall take place after his death. The making of a will is not a natural right, but is a statutory privilege conferred by legislative grant. The argument of counsel for appellants revolves around the first sentence in the paper. "Until I can have my will written the following are my wishes in regard to my estate."

They say that these words clearly import, not that he intended the paper to be his will, but that he intended to write a will at a later date, and further that the language shows that he did not intend to make a final disposition of his property by the instrument, and also that the paper, on its face, shows that it was intended to operate during his lifetime. It is insisted that the word "until" imports something to be done in the future, that it is a word of postponement, and that it never means present action, but looks always to the future and to some act in the future. We take it there will be no disputing the fact that the determination of whether an instrument is testamentary in character depends wholly upon the intention of the maker, and that, in the absence of a testamentary intent, there can never be a will. The animus testandi must exist contemporaneously with the execution of the instrument, and the intent that the instrument shall be a will must apply to the particular instrument offered as a will. If the paper shows no more than an intention that the person intended to make a disposition of his property in the future as indicated in the paper, it is not sufficient. It must appear that the paper itself was the instrument which he intended as his will. No paper can ever be established as a will by merely establishing the intention to make one. As said in Page on Wills (2d Ed.) vol. 1, sec. 47:

"In order that an instrument may amount to a will, it must show testator's intention to make a testamentary gift by that instrument as distinguished from a gift to be made, or spoken of as already made, by some other instrument."

It is always true that, if the testator does not intend the instrument in question to take effect as his will, and it is merely the expression of what he intends to do more formally and completely in the future, it is not a will. When a person executes an instrument offered as a will, it must have been intended by the maker to operate as a

will when it was executed, or it must have been adopted as such at some later date. 40 Cyc. p. 1077; 28 R. C. L. p. 59.

Counsel rely on the opinion of the California court in Re Major's Estate, 89 Cal. App. 238, 264 P. 542. It is said that it is a parallel case to the one under consideration. An examination of the instrument before the court in that case shows that the writer of it referred to the copy of his testament, and he said that he had not changed his idea, and the person to whom it was addressed was to be the owner of all of his property. The court held that the instrument was not a will, and, referring to the quotation from Page on Wills above, we find that an instrument which speaks of a will as already made does not show the intention of the testator to make a testamentary gift. The facts in that case were entirely different from the facts in the case before us. The letter written by Major in that case, as was properly held by the court, did not make it satisfactorily apparent that the testator intended the letter itself to be his will. He referred to "the copy of my testament," clearly indicating that he had already made a will. There was no intention expressed in the letter which indicated that the testator meant for it to be a disposition of his estate. It was rather a statement that he had not changed his mind, and that arrangements previously made would not be disturbed.

The next case relied on by counsel for appellants is that of Johnson v. White, a case from the Arkansas Supreme Court, 172 Ark. 922, 290 S. W. 932. The instrument under consideration in that case was a letter written by a soldier to his wife. He said in the letter: "I am going to have my policy changed from Esther to you for it is my will and wishes is for you to have it."

That is quite different from the paper offered as the will of Dr. Nelson. That letter expressed no more than the intention in the future to have the beneficiary in a policy changed. If he had said that it was his intention to change the beneficiary by the written instrument, and that such a change should be valid until he could execute a formal change of the beneficiary, it would have more nearly approached the instrument left by Dr. Nelson. Dr. Nelson did not say that he intended to make a disposition of his property by the execution of a will in the future, but he used the present tense, and said that the

paper expressed his wishes as to the disposition of his estate at the time, and that the wishes so expressed should exist until he could have a will written. In the case last cited the court apparently had no difficulty in reaching the conclusion that there was nothing in the writing evidencing an intent on the part of the writer to bequeath the proceeds of his insurance policy to his wife. The present purpose was in the mind of the soldier to have the change made at some time in the future, while Dr. Nelson had the present purpose to dispose of his property, and said that it should be effective at the time and until he should have a will written.

The opinion in Re Johnson's Will, a case from the North Carolina Supreme Court, 181 N. C. 303, 106 S. E. 841, is relied on by appellants. That was a letter written by Johnson in which he stated that he had talked with the person to whom the letter was addressed about his will. He pointed out in the letter that he wanted the one he was addressing to write his will, and he indicated the disposition that he desired should be made of his property. There is no expression in that letter that it should operate as a disposition of his property until the will should be written. In that respect it is different from the instrument executed by Dr. Nelson. The court there held that the instrument showed, on its face, that it was not the intention of the writer of the letter that it should operate as a will, but merely that he had in contemplation the preparation of a will by which final disposition of his property should be made. The case of Allgeier v. Brown, 199 Ky. 669, 251 S. W. 851, is cited by counsel for appellants. It is true that this court, in that opinion, alluded to the doctrine that a paper must be written animo testandi, or it may not be treated as a will. But the court held that the instrument left by its signer was no more than a memorandum advising the party claiming under it that he had been left certain property under the provisions of a codicil to his will, or by his executor. The case sheds little light on the question before us.

The case of Hocker v. Hocker et al., 4 Grat. (Va.) 277, cited by counsel for appellants, is another case where the instrument simply gave directions as to how its signer desired his estate to be disposed of by will. None of the cases cited and relied on by counsel for appellants gets exactly to the point.

Counsel for appellee call attention to the case of Milam v. Stanley, 111 S. W. 296, 33 Ky. Law Rep. 783, 17 L. R. A. (N. S.) 1126, where a convicted felon who was to be legally executed within three days thereafter wrote a letter to his daughters in which he expressed the desire to make a deed to a certain house and lot. The court, in considering the whole paper, reached the conclusion that the language used showed that he had in mind, not something that he was going to do, but something that he was then doing, and held that the paper was testamentary in character. The opinion of the court in that case shows, on its face, that the circumstances surrounding the writing of the letter had weight with the court. It was pointed out that his last hope was gone and that he knew he was going to die three days thereafter, and because of this circumstance the court reached the conclusion that he did not have in mind that he would thereafter make a deed to his daughters. The case hardly measures up to the facts in the case before us. The case in principle was the same as that of Smith v. Smith from the Supreme Court of Appeals of Virginia, 112 Va. 205, 70 S. E. 491, 493, 33 L. R. A. (N. S.) 1018, where the court pointed out that it is a settled rule in this country, in determining whether the instrument propounded was intended to be testamentary, to take into consideration surrounding circumstances, and that the language of the instrument will be construed in the light of such circumstances, and, if it shall appear under all the circumstances that the instrument was intended to be testamentary, the court will give effect to the intention if it can be done consistently with the language of the instrument.

The paper executed by Dr. Nelson is not merely the expression of an intention on his part to have a will written in the future wherein he will dispose of his property, but the intention is clearly expressed that the paper which he has himself prepared shall operate as a testamentary disposition of his property in the event he should die before he should have a will formally prepared. The paper is to act instead of a will until his will is written, and that which is intended to act in lieu of a will becomes itself a will. Every person competent to make a will has the right to make a later will, and the fact that Dr. Nelson expressed his intention to make another will in no way operates against the construction

that the paper which he executed was in fact a will. The whole court has reached the conclusion in its consideration of this case that Dr. Nelson wrote the paper animo testandi, and it follows that it was his will and properly admitted as such.

It is argued by counsel for appellants that the paper executed by Dr. Nelson was of a doubtful meaning, or ambiguous nature, but we do not agree with that contention. We find no ambiguity. It is suggested that, if the meaning was ambiguous or doubtful, an issue was raised as to whether Dr. Nelson himself considered the paper as testamentary. But, as there was no ambiguity in the language of the paper, there was nothing to give rise to the question argued by counsel. It appears to be the general rule that an instrument free from ambiguity upon its face may not be supported or attacked by oral evidence to show that the maker intended it to operate or not to operate as a will, but there is a prevailing rule that, if the instrument is ambiguous on its face, and might or might not be a will, extrinsic evidence of the intention of the maker is admissible to show whether the instrument is a will or not. Finding nothing ambiguous in the paper, there is no room for the application of the rule just stated. It is claimed by counsel for appellants that there was proof in the record tending to show that Dr. Nelson had not recognized the paper as a will after it was executed by him. But, if it was a will in fact, what he may have said about it thereafter could not be competent, since there was no language of doubtful meaning in the paper. There was nothing in the record to justify the giving of instruction D offered by appellants on this point.

Complaint is made that the court did not exclude all, or much, of the testimony of the appellees. The widow of the testator is competent to testify in a will contest. Russell v. Tyler, 224 Ky. 511, 6 S. W. (2d) 707. It is urged that it was not competent to prove, by his widow, that the paper in contest was written wholly by the hand of Dr. Nelson. The only authority cited by counsel for appellants is section 606 of the Civil Code of Practice, which contains a provision that neither a husband nor his wife shall testify while the marriage exists or afterward concerning any communication between them during marriage. It would be going far to hold that knowledge of the handwriting of her husband is a

communication between husband and wife. But we are not left to speculate about the matter, as it has been held by this court in the case of Caddell's Heirs v. Caddell's Executor, 175 Ky. 505, 194 S. W. 541, that the provisions of section 606, Civil Code of Practice, do not prevent the admission of the testimony of a wife in the case of a will contest relating to communications between the husband and wife during the marital relations, nor does the section prevent the admission of the testimony of the wife in a will contest concerning verbal statements of, or transactions with, or acts done by, the husband while living. There is no case wherein it has been decided by this court that a widow cannot testify in a will contest on the issue of testamentary capacity, or undue influence, or on either of such issues. Russell v. Tyler, supra. The complaint by counsel for appellants about the admission of the evidence of the widow on the points mentioned is without merit.

Some complaint is made about the manner and conduct of counsel for appellees in the cross-examination of the witness Mattie Skirvin. There was nothing in that examination sufficiently prejudicial, if prejudicial at all, to justify the reversal of the judgment on that ground. The cross-examination appears to have been aimed at developing before the jury the idea that the witness was, to say the least, "peculiar," and in that counsel pursued the examination more assiduously than was altogether proper. But the whole testimony of the witness was not such as to have much weight one way or another with the jury.

Judgment affirmed.

Whole court sitting.