## Dixon et al. v. Dameron's Administrator et al.
## Bartram et al. v. Same.

(Decided Dec. 11, 1934.)

REUSCHER & REUSCHER, HOMER SULLIVAN and FRED WEILAND for appellants.

HORACE ROOT for appellees.

OPINION OF THE COURT BY JUDGE CLAY—Affirming.

On February 22, 1933, Alice Bartram Dameron wrote the following letter:

"Dearest Gladys Your dear letter received so glad to hear from you & how things ware going with you I am not so good & havent ben since I am here I sent an Air Mail Special to your mother & Paper I dont want them to leave Fla tel they see me as I dident make a Will only Geo to Me & Me to Geo & thats no good now I Want to have it All made out Should any thing turn up thare is many to make trouble over What little I have if they get the chance that is why I Want Willie here I want him to have everything I have left the rest of Meds children ment nothing to me & I am not going to leave them any thing of mine they would not appreciate it any Way thare are sum things I want Sum others to have I will write it down for Willie so he will know what to do Gladys you Know What belongs to Bess See that she gets it Effie has treated me roten Since Geo died I owe her nothing When she come down to the House I paid her for every bit of work She done dear Keep My Silver Ware & pass it on to our baby When that time comes I Know you will take care of my Lot for me I hope we will all be thare to gether Sum day this isent a verry nice thing to think about I sure hope Willie and Freda get here soon Now you know any way love and kissed to you all as ever Kindly aunt Alice Feb 22 hope you write real soon."

On March 8, 1933, Alice Bartram Dameron wrote and signed in the presence of William H. Dixon and Freda Dixon the following paper:

"To Hattes Son Dameron Martin one hundred dollars & Geo Ring.

"To Charles K. Dameron 2 fifty dollar liberty bonds & Geo Watch.

"To Effie Pritchard my life insurance in Metropolitan, eight hundred dollars to Freda Dixon & my Solitary diamond & pin.

"To John Sutherland Geo Gun cabinet & guns.

"To Gladys Sutherland my house 151 Ward Ave Bellevue Ky & my Alice Spoons.

"To Mary Dameron Hamilton 2 lots at South Ft Thomas Ky.

"To Bess C. Wilson liveing room suit & the Ford Sedan Car.

"To Bonne Jean Wilson my player Piano."

Alice Bartram Dameron died, a resident of Campbell county, on April 10, 1933. She had no children, but was survived by several collateral relatives. During the April term of the Campbell county court the foregoing writings were probated as her last will and testament. On appeal the circuit court directed the jury to find the writings to be the last will and testament of Alice Bartram Dameron, and entered a judgment to that effect. Certain collateral relatives not mentioned in the will have prosecuted separate appeals.

A will is an instrument by which a person makes disposition of his property to take effect after his death. It must be ambulatory in its nature and revocable at the will of the maker. Whether or not an instrument is testamentary in character depends upon the intention of the maker. It is the animus testandi that makes an instrument a will. Howard's Ex'r v. Dempster, 246 Ky. 153, 54 S. W. (2d) 660. Any instrument executed with the formalities of a will, no matter in what form, if intended as a will, and not to take effect until the maker's death, may be construed as testamentary and admitted to probate, provided it is revocable at any time at the pleasure of the maker. Little's Adm'r v. Sizemore, 208 Ky. 135, 270 S. W. 729. No particular form of words or expressions is necessary to constitute a legal disposition of property. 28 R. C. L. 109; Milam v. Stanley, 111 S. W. 296, 33 Ky. Law Rep. 783, 17 L. R. A. (N. S.) 1126. Of all instruments a will is least governed by form, the form being unimportant, except as indicating intent. 28 R. C. L., p. 109; Schumaker v. Schmidt, 44 Ala. 454, 4 Am. Rep. 135; In re Holbrook's

Estate, 213 Pa. 93, 62 A. 368, 2 L. R. A. (N. S.) 545, 110 Am. St. Rep. 537, 5 Ann. Cas. 137. In Ruling Case Law it is said:

> "In short, any writing, however informal it may be, made with intent of giving a posthumous destination to the maker's property, if executed in accordance with the statutory requirements, may be a good testamentary disposition. Almost every conceivable form of obligation or writing by which men attempt to bind or declare the legal status of property has been adjudged to be a will. The form of the instrument stands for but little."

28 R. C. L., p. 110. Following this rule it has been held in this and numerous other states that a letter written and signed by the author may serve as his last will where it contains testamentary language indicating that it was so intended. 28 R. C. L., p. 113; Milam v. Stanley, supra; Wells v. Lewis, 190 Ky. 626, 228 S. W. 3. With these rules in mind let us examine the two papers. At the time they were executed the testatrix was in Florida, and seriously ill. She understood her condition when she wrote the letter of February 22, 1933. She starts off by saying, "I am not so good & havent ben since I am here." She tells Gladys that she does not want her mother and papa to leave Florida until they saw her. After referring to the fact that there were many to make trouble over what little she had, if they got the chance, she adds:

> "That is why I want Willie here I want him to have everything I have left."

After telling why she had not left the rest of Med's children anything, she adds:

> "Thare are sum things I want Sum others to have I will write it down for Willie so he will know what to do."

After saying to Gladys, "Keep my Silver Ware & pass it on to our baby," she expresses confidence in the fact that Gladys will take care of her lot, expresses the hope that they will all meet there together some day, and adds, "This isent a verry nice thing to think about." She then concludes the letter with the hope that Willie and Freda will get there soon. After the letter was written, Willie and Freda did come, and the testatrix wrote in their presence the paper of March 8, 1933, thus doing exactly what she said she would do, in order that

Willie might know what to do. In short, we have a letter written in contemplation of death and dealing entirely with the disposition of the property of the testatrix after her death. In this letter she makes it plain that she wanted Willie to have everything that she had left, with the exception of some things she wanted some others to have, which she would write down so that Willie would know what to do. In the circumstances there is no escape from the conclusion that the writings in question were intended as a will It follows that the peremptory instruction was proper.

On each appeal the judgment is affirmed.