## Boggess et al. v. McGaughey et al.

January 16, 1948.

Roscoe Conkling, Judge.

McBrayer & McBrayer, J. W. Jones and Jones & Jones for appellants.

Rollin Gibbs and Woodward, Dawson, Hobson & Fulton for appellees.

OPINION OF THE COURT BY STANLEY, COMMISSIONER—Reversing.

The question is whether a portion of an undelivered holographic letter is a will. On an appeal from an order of probate, the appellants proved some circumstances surrounding the parties and the writing of the letter. In the absence of countervailing evidence, the court directed a verdict and adjudged the relevant portion to be a will. The contest is prosecuted by the decedent's sisters, brother, nieces and nephews against the surviving husband, and Mrs. Ethel Morgan and her brother, Andrew McCray, a niece and nephew, who had been reared by Mrs. McGaughey and whom she commonly referred to as "my children."

The decedent, a widow, married John McGaughey, a widower, on September 29, 1942. It is apparent they were of middle age or older. They had been residents of Anderson County, but went to live near Franklin, Indiana. Within a month McGaughey left his new wife

and returned to Anderson County. It appears that he had written her after going away. On October 28, 1942, Mrs. McGaughey wrote a letter to her husband, but never mailed it. Instead she went for her husband and took him back to Indiana. Mrs. McGaughey died at Mrs. Morgan's home, in Louisville, on October 17, 1944. About a month later the letter was found in her bureau, with her Bible and insurance policies. The bureau was stored in the basement of her niece's home. No one had previously known of its existence. It begins:

"Mr. John McGaughey.

Dearest Husband, I have just received & read your dear sweet letter & I sure am glad to hear from you my darling. You belong to me & I want you & if you didn't have a dime I want you because I love the ground you walk on & I can't live without you & you must come home to me and stay. This is your home & will be if I pass away as long as you live & that is all you would need & then it will go to my 2 children. As I told you before we was married. Darling come on to me at once or I'll die."

This is the portion of the letter that was probated. Following it are several pages in which the writer tells of her nervous condition, and over and over again, impassionately and pathetically, declares her undying love, describes her loneliness and grief and pleads for his return home. She says: "My home is your home" and repeatedly declares that she will take care of him; that it is her duty to do so and not his daughter's. She agrees if he thought it best "to sell out over here and go back to Kentucky." In the course of the long letter she expresses surprise that he should have been hurt at something she had said jokingly, apparently relative to his having lost or been robbed of his money. Then there is a bit of homely news about "our corn crop" and some family gossip. The letter continues:

"I offered to give you the money if you wouldn't grieve, & now I'll still say if you come on home & stay as you should do in the sight of God, we will make money, & you sure can shair every dime of it. Its you home with me & I want you to enjoy it. & if you don't I can't. So please come on to your wife at once, & don't

worry about our taking care. I'll see to that as long as I have got any home to stay at its yourse to. & if that did happen that I didn't have a home we will still stay together. I'll see to it as soon as you come home that if I pass away first its all left to you as long as you live, & then it goes to my 2 children. You understand don't you Darling. So don't fail me & don't give me up, if you do you sure are standing in your own light, & will regret it all some day not one day but for ever as long as you live. See you are not pleasing God if you don't come on home.''

The concluding portion of the letter is a repetition of her devotion, and references to their home and his return.

People are prone to write things in letters they never dreamed would be regarded as a will or be seized upon after death as making the ultimate disposition of their estates. Such statements are often made casually or to record a passing thought or a purpose to be accomplished later on. See Annotations, 54 A. L. R., 917. Therefore, our inquiry is whether the part of the letter probated was written animo testandi—with the intent to make a will.

An essential or indispensable characteristic of a will is that the paper when executed was designed to make testamentary disposition of the signer's estate or a part of it. There must be a contemporaneous intention thereby to create a revocable gift of property to take effect at death, and not merely to declare a purpose to make a gift in praesenti or a bequest by some other paper, or to speak of such action as already done by some other instrument. If the writer does not intend the letter or other document to take effect as a will but intends to execute another instrument to that effect, it is not a will. The intention should be deduced primarily from the language of the letter as an entirety, but if it is not clear, the light of all surrounding circumstances relevant to the issue may be thrown upon it. Milam v. Stanley, 33 Ky. Law Rep. 783, 111 S. W. 296, 17 L. R. A., N. S., 1126; Wells v. Lewis, 190 Ky. 626, 228 S. W. 3; Allgeier v. Brown, 199 Ky. 669, 251 S. W. 851; Nelson v. Nelson, 235 Ky. 189, 30 S. W. 2d 893; Dixon v. Dameron's Adm'r, 256 Ky. 722, 77 S. W. 2d 6; How-

ard's Ex'r et al. v. Dempster, 246 Ky. 153, 54 S. W. 2d 660.

It is familiar law that no particular form or special language is required for a will. It is sufficient if it shows an intention that it shall be so regarded. Yet the form or the language perhaps better than anything. else may establish the writing to be a will, as in the letter probated in Landrum v. McNeill, 269 Ky. 474, 107 S. W. 2d 314. The use of such terms as "devise," "leave" or "will" is highly persuasive. Where there is no such disposing language, the less likelihood there is that the writer intended the paper to be or to operate as his last will and testament. There is none in Mrs. McGaughey's letter except "will" used in the sense of "shall."

Another consideration of importance in searching for the intention of one who executes an instrument of this character, it seems to us, is his apprehension or anticipation of early death, e. g., where the writer was certain death was at hand, as in Milam v. Stanley, 33 Ky. Law Rep., 783, 111 S. W. 296, 17 L. R. A., N. S., 1126; or was in ill health, as in Dixon v. Dameron's Adm'r, 256 Ky. 722, 77 S. W. 2d 6; and Landrum v. McNeill, 269 Ky. 474, 107 S. W. 2d 314; or was about to undergo a surgical operation, or to start on a perilous journey or undertaking. If a letter is written on such an occasion and contains language which could be fairly construed either way, it is a reasonable conclusion that the writer intended to direct the post-humous destination of his property. No such condition surrounded the writer of this letter. There is no suggestion in it, or in the extrinsic testimony, of any contemplation of the nearness of death. The implication is the converse.

This letter reveals the writer had just received a letter from her husband who had left her so soon after marriage. She felt she had given offense and was in the depths of despair. It was written in the stress and strain of the hour. Cf. Ellison v. Smoot's Adm'r, 286 Ky. 768, 151 S. W. 2d 1017. We think her sole purpose was to make amends and to persuade and induce her husband to return to her and to the home which she owned. There were 16 different entreaties to that end. The portion of the letter which has been probated as

her will is consistent with that purpose. She was assuring him that he would have a home and be cared for as long as he lived even though she should be the first to die. This is made manifest by the part we have last quoted in which she said: "I'll see to it as soon as you come home," repeating what she had assured him in the beginning, that "its all left to you as long as you live" and "then it goes to my 2 children." This is further indicated in the very next sentence, "As I told you before we was married." Here is but a declaration or renewal of a promise to make the provision at another time in another paper. To be noted also is the statement in this connection that if he did not return he would regret it as long as he lived. Mrs. McGaughey knew how to make a will, for previous to this marriage she had executed a formal one prepared by her banker and lawyer in Lawrenceburg. This definite qualification or limitation of the expression or commitment in the beginning of her emotional letter is of considerable importance. It is conclusively consistent with everything the woman had written.

We do not attach the same significance as the appellees to the fact that Mrs. McGaughey never mailed the letter but kept it in her possession. She was living on a farm and perhaps while awaiting an opportunity to mail the letter, she determined the better thing to do was to go see her husband and talk over the situation. She did come to Kentucky immediately and he returned with her a few days after the date of the letter. She accomplished its major purpose in a different way. Why she kept the letter for two years affords a study for the psychologist. But we cannot conclude that retaining it was for the purpose of having it probated as her will.

We are of opinion, therefore, that the court should have adjudged the letter not to be a will and should have directed that the order of its probate be set aside.

Accordingly, the judgment is reversed.