Gary **MALLORY**, Steven Mallory, Mark Mallory, Jerry French and Ronnie French, Appellants,

v.

Jackie **MALLORY** and Virginia Boothe, Individually and as Co–Executors of the Estate of Lillian Mallory, Appellees.

No. 92–SC–933–DG.

Supreme Court of Kentucky.

Sept. 30, 1993.

J. Michael Poole, Bruce Garrett Anderson, Louisville, for appellants.

John F. Estill, Fox, Wood & Wood, Maysville, for appellees.

LAMBERT, Justice.

The issue here is whether a holographic instrument written by Lillian Mallory contains an expression of testamentary intent sufficient to sustain its probate as the decedent's will. All courts have below so held, but this Court is unable to discover such intent. Accordingly, we reverse.

Following Mrs. Mallory's death in 1990, a formal will which had been executed in 1967 was probated in the district court. A few days thereafter, appellee Boothe found an envelope in the decedent's Bible in which was found a holographic instrument, duplicated herein as nearly as possible, as follows:

"Valentine Day

February 14 1987

Jackie Mallory +

Virginia Booth

said by Lillian Mallory

to be sold and be divided

between them/property

 by my hand

Mrs Lillian Mallory"

On tender of the holographic instrument which bore a 1987 date, the probate court vacated its prior order and adjudged it to be the decedent's will. An additional document entitled "codicil" which was executed in 1989 was found among the decedent's belongings. By this attorney-prepared codicil, the decedent designated appellees as her co-executors for the stated reason that her executors had predeceased her. The codicil did not identify which of the prior "wills" to which is referred. However, only the formal 1967 will contained a designation of the decedent's husband and alternately her son, Glenn Mallory, as executors, who, by the time of her death, were both deceased.

Throughout this litigation appellants have contended that the holographic instrument lacks sufficient expression of testamentary intent to satisfy the requirements of a will. As an alternative argument, they assert that the 1989 codicil which was for the purpose of naming new executors constituted a republication of the 1967 will even in the event it had been revoked by subsequent inconsistent instrument. They reason that since the 1989 codicil was to name replacements for prior deceased executors-designee and only the 1967 will named executors, the codicil must have referred to the earlier formal will. Appellees respond that the holographic instrument satisfies the statutory and decisional

requirements for a valid will and rely on various decisions of this Court which include *Holtzclaw v. Arneau*, Ky., 638 S.W.2d 704 (1982), *Hendren v. Brown*, Ky., 364 S.W.2d 329 (1962), and *Boggess v. McGaughey*, 306 Ky. 319, 207 S.W.2d 766 (1948). They reject any notion of republication for failure to expressly identify the prior instrument.

 Numerous decisions of this Court address the issue here: whether the instrument contains a sufficient expression of testamentary intent to justify its treatment as a will. From these decisions, certain rules have emerged and are well-stated and legally supported in J. Merritt, 1 *Kentucky Practice*, § 485 (1984), as follows:

A holographic will need not be in any particular form nor must it use any technically appropriate language. Indeed, the holograph may purport to be a promissory note, a deed, a memorandum, or a letter in which case it may be signed in a chatty fashion such as "Aunt Nanie."

For a holographic instrument to operate as a will, the writer must have testamentary intent—that is, he must intend that the instrument dispose of his property after his death. Not only must the writer have in mind the necessary posthumous disposal of his property, be he must intend that the particular paper he is writing operate as a will. An expression of what he intends to put into a will at some future time is not testamentary. A writer may, however, intend the instrument he is writing to serve as his will until he is able to prepare a more formal document....

The writer's intention should be deduced primarily from the language of the instrument, but if it is not clear the relevant surrounding circumstances may be considered. Language such as "devise," "leave," or "will" is highly indicative of a testamentary intention. An outside circumstance of much importance is the testator's anticipation of an early death.

An expression of testamentary intent has been uniformly held to require 1) a disposing of property 2) which takes effect after death. *Simon v. Wildt*, 84 Ky. 157, 7 Ky.L.Rptr. 800 (1886). *See also Dixon v. Dameron's Adm'r*, 256 Ky. 722, 77 S.W.2d 6 (1934), for a compi-

lation of rules appropriate to the determination of whether a holographic instrument is a will. A leading decision on this issue is *Boggess v. McGaughey, supra*, in which a long rambling letter was written by a wife to her estranged husband. In the letter, there were sixteen separate entreaties to the husband to return home. Despite some language which might have been considered testamentary, the Court held that the letter was not a will.

There must be a contemporaneous intention thereby to create a revocable gift of property to take effect at death, and not merely to declare a purpose to make a gift in praesenti or a bequest by some other paper, or to speak of such action as already done by some other instrument. If the writer does not intend the letter or other document to take effect as a will but intends to execute another instrument to that effect, it is not a will. The intention should be deduced primarily from the language of the letter as an entirely, but if it is not clear, the light of all surrounding circumstances relevant to the issue may be thrown upon it. (Citations omitted.)

It is familiar law that no particular form or special language is required for a will. It is sufficient if it shows an intention that it shall be so regarded. Yet the form or the language perhaps better than anything else may establish the writing to be a will, as in the letter probated in *Landrum v. McNeill*, 269 Ky. 474, 107 S.W.2d 314 [(1937)]. The use of such terms as "devise," "leave" or "will" is highly persuasive. Where there is no such disposing language, the less likelihood there is that the writer intended the paper to be or to operate as his last will and testament.

*Id.*, 207 S.W.2d at 767–768.

 With the foregoing rules in mind, we turn to the instrument before the Court. As to the disposition of property element, one could conclude that the language "to be sold and divided between them property" was sufficient. There is a reference to "property" and a contemplation of future action. As such, but with little conviction, we conclude that this language is sufficient for the disposing element. As to the require-

882

ment that the disposition take effect after death, we are unable to find any such indication in the instrument. No time is stated for the sale and division and the instrument is wholly without language indicative of contemplation of death. Kentucky courts have held numerous euphemistic words and phrases which refer to the testator's death to be sufficient. In *Holtzclaw* the phrase "in case something should happen to me" was held sufficient contemplation of death. A similar phrase was held sufficient in *Underwood v. Underwood,* 273 Ky. 654, 117 S.W.2d 596 (1938). As such, it is not necessary that a decedent use terms such as "death," or "die," if there is language from which a court may discern an intention that the instrument take effect at death. While the instrument before the Court demonstrates a certain formality by virtue of having been dated and use of the phrase "by my hand" followed by the decedent's signature, there is nothing in the instrument from which we can conclude that it was intended to take effect at the decedent's death.

■ The Court of Appeals dealt with this omission by reference to the circumstances surrounding the instrument. It points to testimony by one of the appellees that the decedent had told her "not to worry, to look in the Bible." The Court of Appeals further relied on testimony that appellants has visited the decedent "maybe twice in the last ten years" and from this concluded that the decedent desired to disinherit her grandchildren. As such, the Court of Appeals improperly relied on extrinsic evidence to supply one of the elements essential to a valid will, that it take effect at death.

■ Kentucky law is well settled that extrinsic evidence is not admissible to alter, contradict, subtract or add to the terms of a will. Such evidence is not available to show what the decedent intended to say but did not. *Smith v. Bowling Green Bank & Trust Company,* Ky., 314 S.W.2d 538 (1958), *West v. Hardwick's Ex'r.,* Ky., 307 Ky. 64, 209 S.W.2d 837 (1948). In *Deboe v. Brown,* 231 Ky. 682, 22 S.W.2d 111, 114 (1929), this proposition was stated as follows:

The will speaks for itself, and its meaning must be determined from the language

used by the testator as found in the will itself. Extrinsic parol evidence is inadmissible for the purpose of ascertaining what the testator intended to say but did not say, or for the purpose of altering or contradicting the terms of the will or adding to or subtracting anything from it. Neither is written evidence admissible for such a purpose.

Just as extrinsic evidence is not admissible to amend the terms of a will, neither is it admissible to supply an essential element missing from an instrument. This is stated in J. Merritt, 2 *Kentucky Practice,* § 1110 (1984), as follows:

As a matter of general theory, since the execution of a will must follow statutory formalities, evidence which in effect *creates* a will is not effective.

The reason for such a rule is articulated in *Boggess v. McGaughey, supra,* as follows:

"People are prone to write things in letters they never dreamed would be regarded as a will or be seized upon after death as making the ultimate disposition of their estates. Such statements are often made casually or to record a passing thought or a purpose to be accomplished later on." *Id.,* 207 S.W.2d at 767.

As is implicit in the foregoing, it is necessary that instruments which are contended to be wills possess the minimum characteristics of disposition of property which takes effect at death. If it were otherwise, virtually any causal writing together with testimony to supply an omission could be converted into a will.

Of the cases consulted, the one most similar to the instant case is *Herndon v. Barnes,* Ky., 519 S.W.2d 823 (1975), in which the decedent penned a purported holographic codicil on the mailing jacket of a *Readers Digest.* In this, various vague notes and directions were given. Reversing the trial court, this Court recognized its long tradition of upholding poorly executed documents as wills, but reiterated that the essential elements must at all times be present. The Court relied on *Nelson v. Nelson,* 235 Ky. 189, 30 S.W.2d 893 (1930), as follows:

If the paper shows no more than an intention that the person intended to make a disposition of his property in the future as indicated in the paper, it is not sufficient.

and the Court concluded that it was impossible to determine the decedent's intention from the purported codicil. As to the trial court's construction, this Court said:

When the trial court determined Betsy's intention from this fragmentary memorandum, he had to do so by conjecture.

*Herndon* at 824–825. This is the circumstance which prevails here.

We have examined the decisions cited by appellants and appellees and engaged in considerable independent research. Of the decisions so consulted, none has been found in which an instrument ultimately adjudicated to be a will was so totally lacking as this one in an essential element. As such, we hereby reverse the Court of Appeals and hold that the holographic instrument of February 14, 1987, was not the decedent's last will and testament.

Upon the foregoing determination, it is unnecessary to decide whether the 1989 codicil constituted a republication of the decedent's 1967 attorney-prepared will. It would appear to follow that if the 1987 holograph is not a will, it could not have revoked the earlier will. As such, we do not reach the question of republication.

All concur.