## Adams' Executrix et al. v. Beaumont.

(Decided November 16, 1928.)

### Appeal from Jessamine Circuit Court.

1. Witnesses.—Testimony of wife of deceased husband as to what deceased said to her, at time he was writing paper sought to be probated as his will, held incompetent, under Civil Code of Practice, sec. 606, and insufficient to establish fact that deceased wrote typewritten paper sought to be probated as his last will and testament.

2. Wills.—Evidence held insufficient to establish that testator wrote paper sought to be probated as his will.

3. Wills.—Where paper sought to be probated as last will and testament of deceased was unsubscribed by witnesses to its execution of acknowledgment, and was written entirely by typewriter, held,

that it is not valid as a will, not being in "handwriting of testator," as provided by Ky. Stats., sec. 4828.

N. L. BRONAUGH for appellants.

JOHN H. WELCH and JOHN WATTS for appellee.

OPINION OF THE COURT BY COMMISSIONER TINSLEY— Affirming.

E. T. Adams, a resident of Jessamine county, Kentucky, was killed by a railroad train in Florida on the 18th day of February, 1926. There was found on his person at the time of his death a typewritten paper in the form of a will, to which the name "E. T. Adams" was subscribed with pen and ink, but no witness subscribed it. It, with other effects found on his person, was sent to and received by his widow, the appellant Evangeline P. Adams, at Wilmore, Ky. In due course the paper was produced in the Jessamine county court, and there probated as and for the last will and testament of E. T. Adams. From the judgment of the county court, probating it as the will of Adams, an appeal was prosecuted to the Jessamine circuit court. To sustain the will so established, the appellants introduced as witnesses the widow and the two sons of the decedent, J. L. Gaugh, a banker, and J. M. Lowry.

Each of the sons testified that at the family breakfast table, about four months prior to his death, their father, the said E. T. Adams, announced to them and their mother that he intended, that day, to write his will; that immediately he arose from the table and went into an adjoining room, and to his typewriter, and began writing; that they each passed back and forth through the room several times while their father was engaged in writing, and while neither of them was close enough to or did actually read what the father was writing, they say that they know he was engaged in writing his will. Neither of them saw the paper at any time until is was probated as their father's will.

The widow testified that on the occasion just mentioned, after her husband had finished writing, he came into an adjoining room where she was, with two typewritten sheets of paper in his hand, one of which he handed to her, with the remark that it was a carbon copy of his will, and which he wished her to keep, and the other

one, which he folded and placed in his pocket. She neither read, nor heard read, nor saw her husband sign, the paper he placed in his pocket; that the paper probated as his will was received by her along with some other personal effects of her husband, sent to her from Florida after his death.

The paper probated in the county court and the carbon copy which the widow testified was given to her by her husband at the time of writing were introduced in evidence and identified by the widow. The probated will is copied into the record, and the original carbon copy is annexed to the record. The record contains a stipulation to the effect that if C. L. Byrd, R. D. Douglas, and F. W. Black, residents of and near Weirsdale, Fla., were present, they would each state that at the time of the death of E. T. Adams they made a search of his clothing and person and took therefrom some personal effects, among which was the paper probated as his last will and testament. The witnesses Gaugh and Lowry each identified the name "E. T. Adams" subscribed to said paper as the genuine signature of E. T. Adams.

The appellee offered no evidence whatever. The case was tried without a jury, and at the conclusion of appellants' evidence the court found and adjudged:

"That the will of E. T. Adams, deceased, dated October 23, 1925, and admitted to probate by order of the Jessamine county court March 30, 1926, is not the last will and testament of said E. T. Adams."

The propounders appeal, insisting that, as the uncontradicted testimony shows the paper to have been actually written on a typewriter by the said E. T. Adams and signed by him, it meets the requirements of the statute, and should be established as his last will and testament.

There is no competent evidence that the deceased, E. T. Adams, wrote the paper in question. While each of the sons testified that at the breakfast table their father said he was going to write his will that day, and shortly afterwards went into an adjoining room and to his typewriter and began to write, neither of them saw or read what he was writing. The father made no statement to either of them at the time as to what he was writing nor afterwards as to what he had written, and neither of them saw the paper now claimed as a will until

it was offered for probate. The testimony of Mrs. Adams as to what her husband, the deceased, said to her at the time is clearly incompetent. Section 606 of the Civil Code of Practice; Russell et al. v. Tyler, 224 Ky. 511, 6 S.W.(2d) 707. Obviously such testimony is not sufficient to establish the fact that Dr. Adams wrote the paper now claimed to be his last will and testament.

The right to dispose of property by will is governed and controlled entirely by statute, and the Legislature of this state has seen fit to prescribe the conditions under which that may be done, and the requisites necessary to that end, in section 4828 of the statutes, which reads as follows:

"No will shall be valid unless it is in writing with the name of the testator subscribed thereto by himself, or by some other person in his presence and by his direction; and, moreover, if not wholly written by the testator, the subscription shall be made or the will acknowledged by him in the presence of at least two credible witnesses, who shall subscribe the will with their names in the presence of the testator."

That statute was enacted and adopted as part of the Revised Statutes of 1851 (2 Rev. Stat. 1860, p. 458), and is substantially the same as the first legislative enactment on this subject in this state, an act approved February 24, 1797 (Bradford, c. 105, p. 377), from which we quote:

"That every person aged twenty-one years, or upwards, being of sound mind and not a married woman, shall have power, at his or her will and pleasure by last will and testament in writing, to devise all the estate, right, title and interest in possession, reversion or remainder, which he or she hath, or at the time of his or her death, shall have of, in, or to lands, tenements or hereditaments, or annuities, or rents, charged upon, or issuing out of them, so as such last will and testament be signed by the testator or testatrix, or by some other person in his or her presence, and by his or her directions; and moreover, if not wholly written by himself or herself, be attested by two or more competent witnesses, subscribing their names in his or her presence "

There can be no doubt that, at the time of the enactment of each of the statutes quoted, the only means of

writing a will was by pen and ink or pencil in the hands of the scrivener; there was then no such instrument as a typewriter, and a will "wholly written by" a testator was understood to mean and did mean that it was wholly in the handwriting of the testator; such a will was, therefore, called and known in law as a "holograph" will—"that which is written in one's own hand" (2 Bouv. Law Dict., p. 1448), and such a will is so called and designated in this state (Graham v. Edwards, 162 Ky. 771, 173 S. W. 127).

The very first reported case which came before this court, in which such a will was involved, is that of Hannah v. Peake, 2 A. K. Marsh. 133. Counsel for appellants rely upon that case to sustain the will in question, because of the expression of Judge Rowan, who wrote the opinion, to the effect that it is not necessary that the will shall be in the handwriting of the testator, but that it shall be written wholly by him. This Peake case was decided in 1819, and the act of 1797, supra, was then in force. In the course of that opinion the court said:

"The whole of the will and the codicils purport to have been written by Spencer Peake by the subsignature of his name thereto. The proof that the will was written by him is positive and satisfactory. The proof that the interlineations were made and the codicils written by him in like manner is chiefly presumptive, but not less satisfactory. If we had doubts as to the latter, still we should be obliged, if we rejected them, to sustain the will upon the proof positive as to it. But believing that they breathe the spirit, and were written by the hand of Spencer Peake, we cannot reject them. The requisition of the statute is not that the will shall be in the handwriting of the testator, but that it shall be written wholly by himself. When a will is written by the testator, it is then evidently his handwriting. But if a will were written in a disguised hand, which could not only not be recognized by any as the handwriting of the testator, but negatived by all as such, yet upon its being proved to have been written wholly by him, we should be constrained to establish it as his will."

While the expression referred to and relied on by appellants appears in the excerpt quoted, it is perfectly

clear that the court was of opinion and held that a will wholly written by a testator is a will wholly in the hand-writing of such testator. In the case of In re Dreyfus' Estate, 175 Cal. 417, 165 P. 941, L. R. A. 1917F, 391, the Supreme Court of that state had under consideration a typewritten will, signed by the testator, but not wit-nessed—a will in the exact condition as the will in this case—and in discussing the paper and its validity the court used this language:

"While it is true that a will made wholly by the testator and by means of a typewriter may be said to have been made 'by the hand of the testator him-self,' it would not be true, accurately speaking, that such a will had been 'written' by him. The process of making letters on paper with a typewriter is essentially a process of printing. The type fixed on a bar is stained with ink and then pressed against the paper, leaving its imprint precisely as in a print-ing press."

The court held that such typewritten will was not valid under the statutes of California, requiring an un-witnessed will to be wholly in the handwriting of the testator.

In the case of In re Wolcott's Estate, 54 Utah, 165, 180 P. 169, 4 A. L. R. 727, the Supreme Court of Utah had under consideration a will written by the testator herself upon a stationer's will form, part of which was printed and part left blank. The testator filled in the blanks in her own handwriting. This will was rejected, upon the ground that it was not wholly in the handwriting of the testator. In the course of its opinion the court said:

"The document actually prepared by her does not meet the statutory requirements. . . . The instrument cannot be sustained as a will without arbitrarily setting the statute aside and substituting our will for that of the Legislature. This we have no right or power to do, however much we may appreciate the hardship incident to a strict construc-tion in the present case. Unflinching loyalty to the law, both in letter and in spirit, is the only sure ground upon which to stand. Even if we had the right to express our views in the present case as to what the statute ought to be, we are not prepared to

say what changes should be made. The law in question is founded upon wise and prudential considerations. It is based upon the experience of enlightened governments, whose growth and development have been upward and onward in the attainment of a higher civilization.''

For a time so long that the memory of man runneth not to the contrary, letters and words have been written with the hand, and ideas and intentions thus expressed on papyrus, parchment, or paper, by means of stylus, or pen and ink, or pencil of some sort; and it is a well known fact that each individual who writes by these means acquires a style of writing, a certain mannerism in the formation of letters and words, absolutely peculiar to himself, and which, almost without exception, renders his handwriting easily distinguishable from that of others by those familiar with it, or by experts in chirography. Hence it is that the statutes of the several states provide that a will ''wholly written by'' or ''wholly in the handwriting of'' the testator may be established as such without subscribing witnesses. While our statute contains the expression ''wholly written by'' the testator, yet, considering the time of its enactment and the means then known by which written instruments were prepared, we are constrained to hold that an unattested will, or a will not subscribed by witnesses to its execution or acknowledgment by the testator, must be wholly in the handwriting of the testator.

In Porter v. Ford, 82 Ky. 191, we said:

'' 'Publication, when spoken of a will, signifies that a testator has done some act from which it can be concluded that he intended the instrument to operate as a will.' Bouvier's Law Dictionary. And in order to insure identity and prevent fraudulent additions to, or alterations of, the instrument, the General Statutes require in every case, when the will is not wholly written by the testator, that 'the subscription shall be made or the will acknowledged by him in the presence of at least two witnesses, who shall subscribe the will with their names in the presence of the testator.' But in the case of a holograph will, no acknowledgement by the testator, attestation by witnesses, nor any other mode of publication than that it be wholly written and sub-

·. scribed by the testator, is necessary to make it valid.''.

In Rutledge v. Wiggington et al., 166 Ky. 421, 179 S. W. 389, it is said:

"Under our statute, a will to be valid must be wholly in the handwriting of the testator, or it must be subscribed or acknowledged by him in the presence of at least two credible witnesses, who shall subscribe the will with their names in his presence."

This court is, therefore, committed to the doctrine that a will unsubscribed by witnesses to its execution or acknowledgment is not a valid will, unless it be wholly in the handwriting of the testator. It is a wise and wholesome rule, sanctioned by sound public policy, established by legislative enactment, and now hoary with age. The will in question does not measure up to the statutory requirements; being not in the handwriting of the testator, and not subscribed by witnesses to its execution or acknowledgment, it cannot be upheld as a valid will.

The judgment of the circuit court being in accord with these conclusions, it is affirmed.