## McNeill et al. v. McNeill et al.

(Decided Nov. 8, 1935.)

WILLIAM LEWIS & SON and C. R. LUKER for appellants.

H. C. CLAY and HOMER C. CLAY for appellees.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming in part and reversing in part.

Sue E. McNeill, a resident of Laurel county, Ky., died on April 22, 1934, the owner of considerable property, both real and personal. She and an unmarried sister, the appellant Elizabeth McNeill, and an unmarried brother resided together. The decedent was never married and left no surviving relatives in the ascending line, her only heirs being collaterals. On November 7, 1933, she prepared a paper in the form of a letter addressed to her sister, the appellant and contestee below Elizabeth McNeill, which was and is replete with affection for the addressee, as well as all other members of

the writer's family. It also volunteered kindly and considerate advice to her sister relating to the latter's future life and approvingly referred to her devotion to duty in the past and expressing an abiding confidence that it would continue to the end. Upon the whole the letter draws a picture of the writer as one loyal to her relatives and a strict advocate of the principles of uprightness and justice. It also revealed that hers had been a life of helpfulness and self-denial, the inevitable fruitage of which was that she adopted the golden rule saying, ''Whatsoever you would that others do unto you, do you also unto them,'' and it became her chart. In the course of it she records some specific devises to be made and then directs that the remainder of her property should go to her sister to whom the letter was addressed. The copy involved in this record was typewritten, but subscribed by the deceased and at the lower left-hand corner she wrote these words: ''Lizzie keep your promise.''

The bank with which she did business was the Farmers State Bank of London, Ky., and its president was D. F. Brown. The deceased had a deposit box which she kept in that bank and in which she placed the typewritten letter above referred to after its execution. Prior to that time, and on January 20, 1933, she addressed a note in her handwriting duly signed by her to Brown, the president of the bank, which in its entirety, omitting date, was and is in these words: ''Dear Mr. Brown: In event of my death or should I die the package or papers in my lock box in your bank is to be given to my sister, Elizabeth and no one else, of course as long as I am living. I will look after it myself, but one never knows what may happen and it would be better for you to know what to do in event of my death. Thanking you for past kindness and with best wishes for a good and prosperous business for '33, am Yours Sincerely, Sue McNeill.'' That paper will hereafter be referred to as the ''Brown note,'' and the letter to Elizabeth McNeill will be hereinafter referred to as the ''letter.''

On May 14, 1934, following the death of decedent, Elizabeth McNeill, to whom the letter was addressed, offered it to the Laurel county court for probate as the last will and testament of her deceased sister. There was also presented in the county court on that ex parte hearing the Brown note, but the record does not show

that it was offered to be or was probated therein as a testamentary paper of the deceased, although the county court in sustaining the motion to probate the letter also ordered the note to be spread upon the order books of the court, but it was not adjudged to be any part of the will of the deceased, although it was entirely in her handwriting. From the judgment of the county court some of the collateral heirs of the deceased prosecuted an appeal to the Laurel circuit court, and in which the nonconsenting collateral heirs were made parties appellee along with Elizabeth McNeill; she having been appointed executrix of the probated letter as the will of Sue E. McNeill's estate by the county court in its probate judgment, and which the letter so directed.

At the trial of the appeal in the circuit court, the judge at the close of the testimony adduced sustained contestants' motion for a directed verdict in their favor finding that the letter was not the last will and testament of the deceased, upon the sole ground that it was not witnessed or executed in the manner provided by law and could not, therefore, be sustained as a will. However, the court in its opinion sustaining the motion for the directed verdict, as well as the verdict so directed and the judgment rendered thereon in the circuit court, each and all expressly rejected the Brown note as forming any part of the will of the deceased when, as we have seen, it had never been offered as such in either court, nor was any effort made to obtain an adjudication in either of them touching its validity as a testamentary paper. It is, therefore, perfectly apparent that so much of the circuit court judgment as attempted to and did reject that paper as a testamentary one was and is erroneous and without legal support.

There was uncontradicted and most convincing testimony introduced by contestee establishing the fact that deceased stated to the witnesses on a number of occasions, both preceding and following the writing of the letter to her sister, that she contemplated writing it as it now appears, and after it was written she stated that she had done so, and she gave to those witnesses, who are unimpeached and uncontradicted, her reasons for doing so. It was furthermore uncontradictedly proven that the typewritten letter which the county court probated and the circuit court on appeal rejected in the judgment appealed from, was made by an attorney on his typewriter and was an exact copy of the

original one that was in the handwriting of the deceased, and it was at her solicitation and request that the attorney copied it in order to make it more legible; the writing of the deceased being more or less nervous and illegible. The original, however, was never offered to be probated; the propounder (appellant here) contenting herself with offering the typewritten copy thereof. Neither did she, as we have seen, offer to probate the Brown note, although, as hereinbefore pointed out, the circuit court on appeal from the county court judgment attempted to reject it as though it had been duly and properly offered for probate.

Section 4828 of our present Statutes is one of long standing. It expressly enacts that: "No will shall be valid unless it is in writing with the name of the testator subscribed thereto by himself, or by some other person in his presence and by his direction; and, moreover, if not wholly written by the testator, the subscription shall be made or the will acknowledged by him in the presence of at least two credible witnesses. who shall subscribe the will with their names in the presence of the testator." If the will is wholly in the handwriting of the maker thereof, the attestation of witnesses is not required. Such wills are denominated as holographic ones, and are universally regarded as valid without further evidence of due and proper execution.

In the recent case of Adams' Executrix v. Beaumont, 226 Ky. 311, 10 S. W. (2d) 1106, 1108, the validity of an unwitnessed but self-typewritten testamentary disposition of one's property was presented for our determination, and in our opinion therein rendered we held that the statute supra was mandatory and that no typewritten paper, though the writing was made and done by the testator himself, could be given validity as a will, unless it was duly witnessed in the form and manner pointed out in the statute. After an exhaustive consideration of the question, we concluded in that case that the expression in the statute, "wholly written by the testator," referred only to a writing in longhand and not to one executed by the testator by manipulation of the quasi-modern invention known as a "typewriter." A considerable number of prior cases from this court, and a greater number from other courts, are referred to in that opinion, and from a consideration of them, together with a contemplation of existing conditions at the time the statute was enacted, we came to the con-

clusion that: "While our statute contains the expression 'wholly written by' the testator, yet, considering the time of its enactment and the means then known by which written instruments were prepared, we are constrained to hold that an unattested will, or a will not subscribed by witnesses to its execution or acknowledgment by the testator, must be wholly in the handwriting of the testator." The reasoning employed in that opinion we regard as unanswerable, and it is conclusive of this case, in so far as it related to the typewritten letter to the sister, and which conclusion necessarily sustains the circuit court judgment rejecting it as forming any part of the testamentary disposition of the property of Sue E. McNeill.

The Brown note occupies an entirely different status. It is entirely in the handwriting of the deceased, and it is sufficient in its phraseology to make testamentary disposition of all of her property that might be contained in her deposit box at the time of her death, and which she placed therein beforehand. If, therefore, that box contained evidences of choses in action, or other properly executed documents that in themselves constitute intangible property, they thereby became the property of Elizabeth McNeill upon the death of her sister under the testamentary disposition thereof that her note effectually made. But before it may or can have that effect it will be necessary to probate it in the Laurel county court. However, that paper cannot be given the effect to validate any improperly executed paper that might be found in the deposit box, but which seems to be a position taken by appellants' counsel. Whether or not such an effect could be given to the typewritten letter if testatrix had expressly referred to it and incorporated it as a part of the Brown note (entirely written by her) is a question that need not be determined and cannot be raised in this case, since no such reference was made  The trial judge in his opinion sustaining contestants' motion for a peremptory instruction said: "It is shown here by the last two witnesses who testified that there was a will written out in long hand by the testatrix and that this paper that was probated in the county court is an exact copy of that writing. There is a statutory provision whereby any will, even though lost, or mutilated or destroyed or stolen may be probated in the court, and that will might have been probated in that manner but it wasn't "

Whether or not that statement is unqualifiedly correct depends upon the existence or nonexistence of certain facts—chief among which is whether the testator destroyed the original letter in her handwriting with the requisite animus revocandi. If not so done by her, it is possible that the inserted statement of the trial judge would be correct. However, that question was neither presented to the trial court, nor is it before us on this appeal, and any opinion that we might advance covering it would be pure dictum. For that reason we refrain from doing so.

Wherefore, the judgment, in so far as it rejected the typewritten letter as forming any part of the last will and testament of the deceased, Sue E. McNeill, is affirmed; but in so far as it also rejected the Brown note as forming any part of her will it is reversed, with directions that the judgment appealed from be modified by eliminating therefrom any adjudication with reference to the validity of the latter writing as forming any part of a testamentary disposition of the property of deceased, and for other proceedings not inconsistent with this opinion.