## Landrum et al. v. McNeill et al.

(Decided June 25, 1937.)

H. C. CLAY & SONS for appellants.
WILLIAM LEWIS & SON and C. R. LUKER for appellees.

OPINION OF THE COURT BY JUDGE BAIRD—Affirming.

This is an appeal from the verdict of a jury and judgment based thereon in the Laurel circuit court rendered June 26, 1936, probating the last will and testament of Sue E. McNeill.

The grounds for appeal are based on the following alleged errors: (1) Because the court erred in admitting evidence offered by the contestee, which was objected and excepted to at the time; (2) error in admitting as evidence the order and judgment of the county court appealed from in the case, and permitting the witness, J. T. Jones, to read said order and judgment; (3) error in overruling motion for a directed verdict when all of the evidence was heard; (4) refusing to give instruction No. X offered by the contestants; (5) in giving instructions Nos. 1, 2, and 3; (6) because the verdict is not supported by the evidence.

We will discuss alleged errors, numbered 1 and 6, first. Sue E. McNeill, a resident of Laurel county, Ky., died on April 22, 1934, the owner of considerable property, consisting of both personal and real estate. She was unmarried. In fact, had never married. She lived with her sister Elizabeth McNeill and her brother George McNeill, both of whom were unmarried. At her death she left no heirs except her brothers and sisters and some nieces and nephews. On November 7, 1933, in contemplation of anticipated dissolution of her body and from a commendable and praiseworthy desire to show her gratitude, appreciation, love, and affection for her devoted sister Elizabeth, as well as for her unfortunate brother, George, whose habits in life were such that he was unable to control or care for himself, she addressed to her sister Elizabeth a letter, which was entirely and wholly written by her, including the signature, as follows:

"Pittsburg, Kentucky, November 7th, 1933.

"Miss Elizabeth McNeill, Pittsburg, Kentucky.

"My dear Sister: I am writing you this letter for your instructions when I am gone. I realize I am growing gradually weaker and may pass away any time. You have been so faithful and steadfast and have given your whole life to me and the family you deserve your reward. I have told all my people there would be nothing to divide at my death for it was done disposed of.

"I have endorsed and assigned over all my bank stock to Con B. Newland because he has been so good to me and George and all the family. I have requested him and William to take care of George in sickness or trouble and help him as long as he lives.

"I have had heavy losses and expenses and am planning on a nice monument for the family and a good iron fence put up around our immediate family graves. When I have done this there will not be very much left. I never had what was talked any way.

"What I have already placed and will put in my box in the Farmers State Bank of London is part of my own earning and I have a perfect right to give it to any one I wish. If I die first it will be given you and you only; it will be yours to do with as you please. This is to include all my land at the time of my death. Be your own Executrix— keep your business to yourself as I have done, it is best. Finish up my plans for the Cemetery.

"Now, Lizzie, I want you to be good to poor brother George, he can't help his weakness. You furnish all necessities for his comfort and well being. You have always been good to him and go on just as we both have in the past, but do not give him money for every one knows it is not for his good. Let him select his clothes, what he really needs, but you pay for them yourself. If he gets real bad sick put him in a hospital and see that he is well cared for.

"Keep the home going just as we always have, knowing how good you have been to all the family and what you will still have to do, there will not be more than enough to last while you and brother George live. Now, Lizzie, you have promised me this and I want you to remember it. Don't sign another note or bond or paper for any one—never make an investment without the advice of your banker or a good attorney. You have done things for the family beyond the limits of human endurance—I tested you to the uttermost and you stood faithful and true and I know you will go on so to the end. Sell land every opportunity as it is only a burden and expense.

478

"I love all my people and leave them my blessings. I hope they will understand that I could not do otherwise than I have with my property. What I put in the box and what I will give you personally will be the balance of my estate and no one will have right to question into my past affairs. It will be yours if I go first. Mrs. Brown knows of this letter and saw it and what I put in the box—all the bank people know it is for you only and the public has no right to know; she made suggestions about the wording of it and to put it in the box with my other papers.

"This is all I require of you, dear, and I pray you will be happy and in peace in your last years.

"You paid all the expenses of poor dear Bob and George through all the court cases, and you will understand when I am gone that I always had your interest in my thoughts and heart.

"I do not want you or any of my people to grieve for me when I am gone, for I will be better off than the ones left. Again I want to tell you that I have always depended on you, and you never failed me once, no difference what it was I asked you to do, no matter how hard or unpleasant you went and did it. I know you are a 'Brave Old Scout', and will fight on to the end.

"Remember I trust you; I will leave this with a trusted friend, and if you should go first I will get it back—if not, dear, may we meet in peace, some sweet day.

"Your faithful sister,

"Sue E. McNeill."

This letter, supra, the contestee, Elizabeth McNeill, claims to be the last will and testament of her sister Sue McNeill. The real issue presented by the record is, Did the evidence authorize the jury to render a verdict declaring it to be the last will of Sue McNeill? The record furnishes abundant evidence that it was seen both before and after her death. In fact, no one seriously contradicts that fact. It is further established by uncontradicted evidence that it was lost; that after a special and careful search it could not be found or produced. It is further abundantly shown that it was entirely in the handwriting of Sue McNeill, including

the signature to it; that after her death it was seen by a number of witnesses, who testified, at least some of them, that they read it and knew it to be her handwriting from having seen her write. It would, therefore, follow that she did not destroy it in her lifetime. There was no evidence that she ever revoked it; on the other hand, just prior to her death, she announced to friends and witnesses, whose testimony is in the record, that she had written her will, giving her property to her sister Elizabeth; that her sister had been unusually kind and considerate of her for many years. There was no testimony offered by contestants on that question, except a number of witnesses did state that after the death of Sue McNeill, the contestee, Elizabeth McNeill, told them in substance that her sister left no will, which she denied. Let that be as it may, the evidence upon the question, as to the letter being in the handwriting of Sue McNeill, in existence before and after her death, and being lost or misplaced, was fully and unquestionably established. It was peculiarly in the province of the jury to pass upon the question. The evidence that Elizabeth McNeill had stated soon after the death of her sister that she left no will was only competent as contradiction and to affect her credibility as a witness before the jury. In fact, the establishment of the letter did not depend upon her testimony. There were other witnesses who testified to the same effect.

We find no error in the court refusing to authorize a directed verdict. The testimony fully established the fact that the will probated was the last will and testament of Sue McNeill.

It is contended that because a typewritten paper was presented to the county court prior to the bringing of this action by the contestee, which was probated by the county court, appealed to the circuit court and then to the Court of Appeals, and adjudged not to be the last will of Sue McNeill, bars, precludes, and estops the contestee from probating the will in question. We see no merit in that contention. The paper that she undertook to have probated in the former proceeding could not be a bar, because it related only to a typewritten letter, and, was not executed as provided by section 4828, Kentucky Statutes.

We think the trial court in passing upon appellants' motion for a directed verdict "hit the nail on the head," in saying:

"As to the pleading of former adjudication the court is of an opinion that the first will attempted to be probated was not and never was the will of Sue McNeill and has been so adjudged by the court. The court is also of an opinion that that does not preclude the beneficiaries under the will from probating the real will of Sue McNeill."

In McNeill et al. v. McNeill et al., 261 Ky. 240, 87 S. W. (2d) 367, 369, this court said that the typewritten letter did not constitute the will of Sue McNeill. In fact, was not a will at all, because it did not conform to the requirements of the section, supra, of the Kentucky Statutes. This section we construed in the case of Adams' Ex'x v. Beaumont, 226 Ky. 311, 10 S. W. (2d) 1106. The typewritten letter that was sought to be probated failed to conform to the requirements of that section, and, therefore, was not a will. The facts in the instant case authorizing the probation of a lost will, which was entirely in the handwriting of Sue McNeill, required no attestation; was simply a holographic will. The only evidence necessary to establish it was that it was entirely in her handwriting, and not revoked or destroyed by her before her death.

In the case of McNeill et al. v. McNeill et al., supra, the court said:

"'It is shown here by the last two witnesses who testified that there was a will written out in long hand by the testatrix and that this paper that was probated in the county court is an exact copy of that writing. There is a statutory provision whereby any will, even though lost, or mutilated or destroyed or stolen may be probated in the court, and that will might have been probated in that manner but it wasn't.'

"Whether or not that statement is unqualifiedly correct depends upon the existence or nonexistence of certain facts— chief among which is whether the testator destroyed the original letter in her handwriting with the requisite animus revocandi. If not so done by her, it is possible that the inserted statement of the trial judge would be correct."

We have not overlooked the long established rule of res judicata, which is, that where a question is once litigated and determined by the judgment of a court of

competent jurisdiction, no question that was therein litigated, or could have been litigated, could thereafter be done between the same parties, or their privies. We do not think the instant case comes under that rule, because in the former case the question passed upon by this court was whether or not the paper presented constituted the last will of Sue McNeill. The decision was to the effect that because it was not executed as provided by the section, supra, of the Kentucky Statutes, it was no will at all. To constitute res judicata, the adjudication in that case should have been upon the identical cause of action, as well as between the same parties. Graves v. Graves, 12 Ky. Law Rep. 796. In other words, to constitute a judgment, a bar, or an estoppel, there must not only be an identity of parties, but there must also be the same subject-matter.

As we said in Prewitt v. Wilborn, 184 Ky. 638, 212 S. W. 442, 449:

"That a final judgment rendered upon the merits of the case, by a court having jurisdiction of the subject-matter and the parties, is conclusive of the rights of the parties and their privies in another suit on the points and matters in issue in the first suit."

See, also, Liverpool & London & Globe Ins. Co. v. Wright, 166 Ky. 159, 179 S. W. 49; Hopkins v. Jones, 193 Ky. 281, 235 S. W. 754.

It is apparent that the facts in the instant case did not authorize a peremptory instruction on the idea that the former trial of the case was a bar or an estoppel or res judicata of this case.

It is insisted that a number of questions propounded to Elizabeth McNeill and the answers to same, which were objected to at the time and overruled by the court, and to questions and answers propounded to numerous other witnesses pertaining to the contents of the lost letter or will, after permitting the witnesses to read the typewritten letter, were incompetent, irrelevant, and misleading. To discuss the testimony objected to separately, would extend this opinion to an unreasonable length and to no good purpose. We have carefully and critically read the evidence in the record and especially the questions and answers complained of, and have reached the conclusion that granting that some of the questions and answers were irrelevant and

incompetent, it was not enough to prejudice the rights of appellant or to mislead the jury.

Counsel for appellant insists that the court committed error in permitting J. T. Jones, county clerk of Laurel county, to read the order made by D. B. Johnson, county judge, of July 9, 1935, which showed that Elizabeth McNeill moved the court to probate the letter containing in substance the will of Sue McNeill, which letter was set out in full in the order. The complaint is particularly made to the following parts of the order:

"On Tuesday, July 9, 1935, Elizabeth McNeill came into open court and filed a typewritten letter and moved the court for an order probating the said letter as containing the substance of the last will and testament of one Sue E. McNeill."

We see no merit in that contention, and while it might have been error to have permitted the entire order, we are unable to see how the jury could have been misled from the real issue to be tried. The object of reading the order was to establish the fact that the typewritten letter was an exact copy of the lost letter, which lost letter the witnesses had already testified about, and as to its contents, had stated that they saw the letter, both before and after her death, that it had been written in pen and ink by the deceased. We see no reason to complain of the reading of the entire order. We are unable to see why the jury should have been misled or prejudiced thereby. It is our opinion from the entire record of the evidence heard by the jury, no other verdict than the one rendered was proper.

It is further insisted that the court erred in refusing to give instruction X and in giving instructions Nos. 1, 2, and 3.

Instruction X reads as follows:

"The court instructs the jury that if they shall believe from the evidence that the paper read in evidence as a copy of a will made by Sue E. McNeill on the 7th day of November, 1933, is in substance a true copy of a will made by her at said time and that said will was wholly written by her for the purpose and with the intention of making that her last will, then they will find the same to be the last will and testament of said Sue E. McNeill unless they shall further believe from the evidence that subsequently she destroyed said paper

for the purpose or with the intention of revoking it or that she substituted therefor a typewritten copy thereof for the purpose of with the intention of making said typewritten copy her last will. If the said Sue E. McNeill did subsequently destroy the said paper, if any there was, written by her wholly in her handwriting with the intention of revoking it as a will or if she did substitute therefor a typewritten copy of said will for the purpose of and with the intention of making a typewritten copy her last will, then they should find the said paper is not her last will."

Instructions Nos. 1, 2, and 3 read as follows:

"Instruction I: You are instructed to find and return a verdict that the paper read and introduced in evidence in this case is not the last will and testament of the deceased, Sue E. McNeill, unless you shall believe from the evidence as set out in Instruction No. II below.

"Instruction II: You are further instructed that if you shall believe from the evidence in this case that the paper read and introduced in evidence herein as a copy of the last will and testament of the deceased, Sue E. McNeill, on the 7th day of November, 1933, is, in substance a true copy of a will made by the said Sue E. McNeill, at said time, and shall further believe from the evidence that the said deceased, Sue E. McNeill, made and executed said instrument by writing the same and signing the same wholly in her own handwriting then you will find the same to be the last will and testament of the said Sue E. McNeill, unless you shall further believe from the evidence that subsequently she destroyed said paper, for the purpose or with the intention of revoking it.

"Instruction III: Nine or more of the jury agreeing can make a verdict, but less than nine cannot. If nine or more and less than twelve of the jury agree, they can make a verdict, but all those agreeing must sign the same, while if the whole jury agree, the verdict may be signed by any member of the jury as foreman."

We are unable to see any serious difference between the instructions offered and those given.

It is insisted that the animus testandi is essential to the validity of a will. To support that contention, counsel copiously quotes from Nelson v. Nelson, 235 Ky. 189, 30 S. W. (2d) 893, wherein this court in substance said that a paper purporting to be a will for the testamentary disposition of property must be written with testamentary intent, and the paper must clearly show upon its face that the testator intended to dispose of his property by the paper alone, etc. Such doctrine is sound and correct. In the instant case, it must be conceded that the lost letter shown by the copy, and fully established by the evidence, clearly appears upon its face that the testatrix gave her property to her sister Elizabeth. There is no ambiguity or uncertainty of her intention. The only questions to be presented to the jury by the court in its instructions were whether or not the paper read in evidence was a true copy of the last will of the deceased, and that the deceased made and executed the instrument by writing it and signing it in her own handwriting, and whether or not after so doing she destroyed it for the purpose of revoking it. That question was clearly presented to the jury by instruction No. 2, supra. Instruction No. 1 directly told the jury that they could not find the paper to be the last will of the deceased, unless they believed, as set out in instruction No. 2. In our opinion, those instructions were not erroneous, but fairly presented the law of the case.

Finding no error in the proceeding that is prejudicial to the rights of appellants, we have concluded that the judgment should be affirmed.

Whole court sitting.