### Hale et al. v. Hale et al.

(Decided March 15, 1932.)

CAIN & THOMPSON, and W. D. O'NEAL for appellants.

C. F. SEE, JR., and FRED M. VINSON for appellees.

OPINION OF THE COURT BY JUDGE CLAY—Reversing.

James Hale and his wife, Genoa Hale, who had no children, were residents of Louisa, Lawrence county. James Hale died, and on October 17, 1927, there was probated in the Lawrence county court a typewritten will dated September 11, 1922, and witnessed by Andy D. See, by which he devised all of his property in fee simple to his wife, and nominated her executrix without bond. At the time of his death James Hale owned some real estate and had on deposit in bank about $3,000. After the will was probated Mrs. Hale conveyed a portion of the real estate to her brother, William F. Wilson, and the remainder to Andy See, L. F. Wellman, and C. T.

Britton, trustees of the Louisa Baptist Church, of which James Hale was a member, to be used as a parsonage. The consideration was "the sum of $1.00 and the love that I have for the First Baptist Church and by virtue of the will and understanding of my husband, James Hale, deceased, and for the further consideration that the said Louisa Baptist Church is to pay to the party of the first part, Genoa Hale, widow, the sum of $10.00 per month during her lifetime." Later on G. W. Hale, Millard Hale, and Bascom Hale, brothers of James Hale, appealed from the order of probate. Thereafter Genoa Hale and the trustees of the First Baptist Church offered for probate in the Lawrence county court an alleged lost will by which James Hale devised his estate to her for life, with remainder to the First Baptist Church. Probate was refused, and the propounders appealed to the Lawrence circuit court. As there was only one witness to the typewritten will, a consent order was entered declaring that will to be void. The case then went to trial as to the lost will, and the jury found that will to be the last will and testament of James Hale. From that judgment this appeal is prosecuted.

At the trial Genoa Hale testified, in substance, as follows: On October 30, 1925, the day Andy D. See was at their home, her husband wrote two wills, one from her to him, and one from him to her. She stood over her husband and saw him writing his own will. The two wills were substantially alike. She signed her will and Andy D. See signed as witness. She did not think she saw her husband put the wills in an envelope. It was her understanding that he brought them to the First National Bank for safe-keeping. She searched for the will her husband made for himself both at her home and in her brother's home, but was never able to find it. When Mr. Kinstler came to the house the last time nothing was said about a will. Her husband told her that he put the wills in bank. The last time she saw the will her husband had it and said he was going to the bank with it. After that he told her several times that the wills were in the envelope at the First National Bank. When Mr. Kinstler came over to the courthouse with the envelope, and they were walking up the steps, she noticed that the envelope was torn and appeared to have been opened. According to Andy D. See he was at James Hale's home on October 30. James Hale had some papers and said that he wanted him to witness his will.

One of them was a typewritten paper. Mr. Hale signed it and he signed it. After that Mr. Hale picked up another will written for himself to Genoa Hale, and read it to him. That will was in the handwriting of James Hale. James Hale signed it and handed it to him, and he signed it. James Hale then picked up another will from Genoa Hale to James Hale, and read it and signed it. He signed it and Aunt Genoa signed it.

The will of James Hale was substantially the same as that of Genoa Hale. James Hale said, if it happened that he and Aunt Genoa went about the same time, to go to the bank, take the last two wills that were written, and have them probated, and not bother about the typewritten will. He also said that, if he should die first, to see that this will (the typewritten will) was probated and let the other two stay in the envelope, and that after that will (the typewritten will) was probated, and after Genoa's death, for him to go and get the other two and probate both of them. After that James Hale cautioned him not to say anything about how he fixed his property. He did not see James Hale writing the wills, but saw him write his name. He signed three wills that day. Afterward he went to the county court, and the typewritten will was probated on his evidence. Mr. and Mrs. B. J. Calloway testified that they were at the Hale home shortly before he died, and James Hale said that he had fixed it so that Aunt Genoa would have all of his property so long as she lived and needed it, but, if the church owed anything and needed it, there would be money for that any time she was willing, and that after her death it was to go to the Baptist Church. Billie Ball testified that he saw James Hale a short time before his death, and he said that he and Aunt Genoa had each made a will to the other, and, if one should die first, the other should have it during his lifetime, and on both their deaths it should go to the Baptist Church.

C. T. Britton testified that James Hale had told him on different occasions that after his death he wanted his property to go to Aunt Genoa, and that after her death to the Baptist Church. J. W. Young, former sheriff, testified that James Hale came to his office some time in 1925, procured a large envelope, put a paper in it which he said was his will, sealed it, and said he was going to take it to the First National Bank. He put only one paper in the envelope. J. B. Kinstler, bookkeeper and

teller of the First National Bank, had known James Hale long and intimately. Some time before his death he brought an envelope to the First National Bank for safekeeping. He thought it had James Hale's name on it and he said it was his will. Some two or three weeks before James Hale's death he went to his home. James Hale had requested him to bring the will. It was in the envelope, sealed at the time. He found Mr. Hale lying on the bed. Mr. Hale asked him to unseal the envelope. He thought he took a pencil, ran it under the flap, tore it open, and gave it to him. Mr. Hale said that there was one clause that he wanted to see. James Hale took the papers out and read his own will. James Hale stated that the will was just as he wanted it. He thought it was the typewritten will. Afterward Mr. Hale put both papers back in the envelope and told him to take them back to the bank. He did that. He sealed the envelope and used more mucilage on it after his return to the bank. The envelope was placed in a compartment inside the safe in the vault. He and two others carried the keys to the safe, but did not open it except for some special purpose. The keys to the compartment were inside the safe. When he took the envelope over to the courthouse it had not been torn or opened. C. F. See, Jr., nephew of Mrs. Hale, testified that Mr. Hale came to see him about writing his will and told him that he wanted his property to go to his wife during her lifetime, and whatever was left to go to the Baptist Church. He then prepared the typewritten will for Mr. Hale merely as a form, telling him that, if he used that form, he would have to have two witnesses, but that, if he and his wife each wrote and signed their own wills, that would suffice. Mae Hale Adkins and Marie Hale Roberts, relatives of the contestants, both swore that they never knew that James Hale's will was in the vault, never saw the envelope, and never opened an envelope that had his will or any other will in it.

As the evidence may be different on another trial, and the case must be reversed on other grounds, we deem it unnecessary to decide whether the evidence was sufficient to take the case to the jury, or to sustain the verdict.

Under our Code no person can testify for himself concerning any verbal statement of, or any transaction with, or any act done or omitted to be done by, one who is dead when the testimony is offered to be given, except

814

for the purpose, and to the extent, of affecting one who is living, and who, when over 14 years of age and of sound mind, heard such statement, or was present when such transaction took place, or when such act was done or omitted, unless the decedent, or a representative of, or some one interested in, his estate, shall have testified against such person with reference thereto, or an agent of the decedent with reference to such act or transaction shall have testified against such person with reference thereto, or be living when such person offers to testify with reference thereto. Civil Code of Practice, sec. 606, subsec. 2. Will contests on the ground of mental incapacity and undue influence furnish an exception and all parties are permitted to testify as to the mental condition of the testator. Combs v. Roark, Admr., 206 Ky. 454, 267 S. W. 210; Russell v. Tyler, 224 Ky. 511, 6 S. W. (2d) 707. Not being a will contest on the ground of mental incapacity or undue influence, but a proceeding to probate a lost will, the case does not fall within the exception. Over the objection of those resisting probate Genoa Hale was permitted to testify in her own behalf that her husband wrote two wills, one from her to him, and one from him to her, and that she stood over him and saw him writing his own will, and, further, that he told her that he put the wills in the bank, and that he stated several times that the wills were in the envelope at the First National Bank. None of the adverse parties were present on the occasions referred to in her evidence, or testified on the subject. In the circumstances she was not a competent witness as to the acts and verbal statements of her husband, and to this extent her evidence should have been excluded from the jury.

Judgment reversed, and cause remanded for a new trial consistent with this opinion.