Alexander P. Robertson, S.
This is an application on the part of three heirs at law of the above-named decedent to vacate a decree entered herein on March 10, 1959, admitting to probate as the last will and testament of Helen E. Foulds, deceased, a will dated March 11, 1938, a codicil thereto dated April 28, 1941, a codicil dated April 8, 1943 and a codicil dated May 12, 1949. The codicil dated May 12, 1949 recites that it is a codicil to a will of decedent dated March 3, 1932 and codicils thereto dated April 4, 1934, October 5, 1934 and November 30, 1934. The decree of March 10, 1959 adjudges that the codicil dated May 12, 1949 be admitted as a codicil of said Helen E. Foulds which appoints a coexecutor of her will and codicils therein admitted to probate.
The testatrix died November 27, 1958. The decree of March 10, 1959 was entered after personal service of a citation upon the three petitioners who now ask to have the decree vacated, the citation reciting that the will and codicils above mentioned, dated March 11, 1938, April 28, 1941, April 8, 1943 and May 12, 1949, purported to be a codicil to a will of decedent dated March 3, 1932 and three codicils dated April 4, 1934, October 5, 1934 and November 30, 1934, which writing dated May 12, 1949 was being offered for probate as a codicil which appoints a coexecutor of the will and codicils dated respectively March 11, 1938, April 28, 1941 and April 8, 1943. The petitioners were cited to show cause why the will and three codicils for which application for admission to probate had been made should not be admitted to probate. On the return date of the citation all three of the petitioners herein failed to appear.
The petitioners contend that the codicil of May 12, 1949, by referring to the will of 1932, presumes its existence on that date and revives it; that the 1932 will contained a revocation clause which revokes the will of 1938; that since the 1932 will cannot now be found, it is presumed to have been destroyed by the testatrix animo revocandi, with the result that she died intestate.
Before the petitioners can prevail, it is first necessary for them to show that they are properly in court, and second, that the remedy which they seek is available to them. Their argument can be summarized as follows: (1) That the Surrogate lacked authority to probate the 1938 will because of (a) the reception of inadmissible evidence, (b) the failure to establish *404 the intent of testatrix; (c) the 1949 codicil speaks for itself and is not subject to construction; (2) that the court lacked jurisdiction because of defects in the citation; (3) that the petitioners are entitled to relief in the interests of justice under subdivision 1 of section 40 of the Surrogate’s Court Act; (4) that the proponents of the will are guilty of constructive fraud.
First, they allege error on the part of the Surrogate in admitting the various instruments to probate on inadmissible or inconclusive evidence. Section 144 of the Surrogate’s Court Act places upon the Surrogate the duty of inquiring particularly into all the facts and circumstances to the end that he be satisfied with the genuineness of the will and the validity of its execution. This is true even though the probate be uncontested. (Matter of Kutzner, 173 Misc. 776.) Therefore, it would appear that the Surrogate has two affirmative steps to take, (1) to investigate and (2) to determine. In the case at bar, the Surrogate had before him the four instruments eventually probated, an alleged copy of the 1932 will and the affidavits of the attorney who drew the 1949 codicil, of her banker who gave the order for its preparation, of the witnesses to the codicil, of the caretaker of her former home, of her personal physician and closest friend, of an officer of the bank in which her 1938 will was found after her death. Parenthetically, it may be noted that while in this proceeding these affiants were cross-examined at great length by the attorneys for the petitioners, and other witnesses were produced, no facts set forth in the affidavit were controverted and no new facts significant as to the intent of the testatrix were brought to light.
It must be remembered that here the petitioners are not questioning either the testamentary capacity of the testatrix or the validity of the execution of any of the instruments involved. The sole question is as to the legal effect of the 1949 codicil. Petitioners, having failed to produce any evidence of actual intent to revive the 1932 will, argue that the codicil speaks for itself in clear and unambiguous language, and that an investigation of the facts and circumstances is not only unnecessary, but actually unpermitted as a matter of law. Therefore, it is obvious that the dereliction of duty by the Surrogate, of which petitioners complain, is not the omission of a full and comprehensive examination, but rather his failure to interpret the facts correctly and to reach the legal conclusion which petitioners prefer. If such be the case, then the error of the court is an error of law, which is subject only to appeal to a higher court, and not open to review by the Surrogate himself. “ The power con *405 ferred upon a surrogate by subdivision 6 of section 20 of the Surrogate’s Court Act, to vacate a decree of this court relates only to matters specified in that statute. It does not apply to judicial error which can be reviewed on appeal. Nor does section 40 of the Surrogate’s Court Act, confer such power.” (Matter of Chisolm, 283 App. Div. 880, 882, citing Matter of Brennan, 251 N. Y. 39; Matter of Henderson, 157 N. Y. 423; Matter of Starbuck, 248 N. Y. 555.)
Petitioners’ second contention is that the court was without jurisdiction in that the citation served upon the distributees was fatally defective. If this be true, then they are entitled to the relief demanded. (Matter of Kilborn, 232 App. Div. 580; Matter of Kaine, 252 App. Div. 101; Matter of Frorup, 10 Misc 2d 432.) The question then becomes, were the distributees properly advised by the citation as to what questions would be before the court upon the return date, and did the decree include any matters not referred to in the citation. The citation states that the proponents are offering four paper writings for probate, identifying each by its proper date. As to the controversial codicil of 1949, the proponents do not attempt to conceal its reference to the 1932 will, but describe it in the following words: “ A writing bearing date the 12th day of May 1949, which purports to be a codicil to a will of said deceased dated March 3, 1932 and to codicils dated, respectively, April 4,1934, October 5, 1934, and November 30, 1934 to a will of said deceased dated March 3, 1932, said writing bearing date the 12th day of May 1949 being offered for probate as a codicil which appoints a co-executor of the above mentioned will and codicils of such deceased which bear date, respectively, the 11th day of March 1938, the 28th day of April 1941 and the 8th day of April 1943.”
Obviously, there are many combinations of words which might have been employed in the composition of the citation. It is possible that a different draft might have been more suitable as a textbook model. However, this court is not persuaded that a different wording would have given a clearer picture to a lay distributee, nor to any attorney asked to construe it. That the attorney, or attorneys, whom the petitioner Brogan first consulted, were unable to suggest the novel argument now before the court, is not due to the ambiguity of the citation, but rather to their lack of imaginative ingenuity. As Surrogate Foley so aptly said in Matter of Sielcken (162 Misc. 54, 64): “ A newly-discovered theory of liability contrived by an ingenious attorney is not newly-discovered evidence.” Clearly the decree of probate does not exceed the relief prayed for in the citation. No fraud, actual or constructive, can be found. The *406 court is unable to excuse the default of the petitioners on the grounds that the citation is defective to such an extent that the court lacked jurisdiction.
Let us assume fro arguendo that petitioners are properly before the court, either because of the inherent “ power of the Surrogate to reopen or modify decrees in the interests of justice ” (Matter of McKinney, 125 N. Y. S. 2d 705, 708) or because the facts here constitute “ other sufficient cause ” as required by subdivision 6 of section 20 of the Surrogate’s Court Act. In either event the crux of the problem is the reasonable probability of proving intestacy. Without this the opening of the decree is but an idle gesture. (Matter of Leslie, 175 App. Div. 108; Matter of Teller, 277 App. Div. 937.)
Petitioners have not been denied their day in court. While it is the general practice in proceedings of this naturé to decide the motion on affidavits, the court has permitted the petitioners to examine and to cross-examine in court every witness who might shed any light upon the life of the testatrix, her habits, customs, whims, relationship with the residuary legatee, and with her own distributees. Pages of testimony have been taken relating to her request for the 1949 codicil and to the circumstances under which it was executed. Before the hearings were concluded, months were available for investigation. Exhaustive and scholarly briefs have been submitted.
Were the matter to be reopened, the court could hardly find otherwise than as follows: Mrs. Foulds, at least as early as 1925, was desirous of leaving her sizable fortune to the Metropolitan Museum of Art. She was never concerned with the welfare of her distant relatives. Nothing occurred during her lifetime to change her attitude towards either. During her stay in the hospital there is no evidence that she even corresponded with or was visited by those who now claim her entire estate. Between 1925 and 1958 she executed numerous testamentary instruments, but never with any change in her general testamentary plan. Almost all of the revisions were the result of the death of her husband, the deaths of her designated executors, the creation of the Foulds laboratory, or for similar reasons. Her character is that of a woman of strong and definite ideas, with sufficient acumen to delegate the conduct of her business affairs to financial experts, and her legal problems to her New York attorneys. She had little personal knowledge of the law of wills, as evidenced by various written inquiries to her lawyers.
In 1949 she decided to name as one of her executors, Blake W. . Francis, a banker, who had taken care of her local business *407 for some years. At her request, Francis engaged a local attorney. Neither of them had access to her then existent will of 1938, or to a copy. For reasons best known to themselves, they did not inquire of her New York lawyers as to its date. Instead, Francis went through the files of the bank in which he was employed and discovered a copy of a codicil to a will dated 1932, in which the bank was named as a trustee. Impelled more by a desire for speed than accuracy, they concluded that the date shown on the codicil before them was the date of the existing will. From this error stems the present litigation.
The codicil was prepared, taken to the hospital where the testatrix was a patient, and executed. At that time the testatrix was 85 years of age, her eyesight and hearing were badly impaired. Although it is admitted that her mind was clear, there is no testimony as to the accuracy of her memory. Before signing the codicil, Mrs. Foulds read it, and at another date it was read to her by the attorney who prepared it. She said that it was satisfactory. It stated that it was a codicil to her 1932 will. The whereabouts of the original 1932 will at that time, or at any time subsequent thereto, are unknown. In 1943, following the death of her principal legal advisor, she wrote to his secretary, requesting that the originals of this will and of six other testamentary instruments and additional legal papers be sent to her. They were duly mailed to her at her Glens Falls home, and their receipt acknowledged. In 1945 she went to the Glens Falls Hospital; after breaking her hip in 1948 she never left the hospital. Nothing resembling a will was ever seen in her possession by either her doctor or her nurses. No business papers of any consequence were found at the hospital after her death, nor was she ever seen destroying any while there. After her death, the 1938 will was found in her safe-deposit box at the bank. The 1932 will has never been discovered, but some (though not all) of the other documents mailed to her in 1943 were found in a desk at her home.
Returning to the execution of the 1949 codicil, it appears from the testimony that Mrs. Foulds never mentioned the 1932 date herself, nor was it ever specifically called to her attention, or stressed. Neither the 1932 will, nor a copy of it, was before her when the codicil was read or signed. No reference was made by the testatrix of any desire to change or to add any bequest, or to revoke her present will or to reinstate a prior will. The sole purpose which she mentioned was the appointment of her local banker as one of her executors, so that he might handle her local properties during administration. The 1932 will established a trust fund for her husband, then living. The 1938 will *408 provides a liberal endowment fund for the benefit of a laboratory established in memory of her husband, then deceased. Furthermore, testatrix, within days prior to the execution of the 1949 codicil, sent Francis to New York City to confer with the New York Trust Company concerning an anticipated claim against her estate. The New York Trust Company was the other executor named in the 1938 will. It was not mentioned in the 1932 wifi.
In the light of the above facts, this court is unable to conceive that on May 12, 1949, Mrs. Foulds had any intention of reinstating her 1932 will, or of dying intestate. Even the petitioners do not argue that such was her actual intent. Their contention is that the Surrogate must close his eyes as to all facts, must disregard human experience, must adjure logic, and be controlled solely by legal presumptions which they aver determine her legal intent. Such is not this court’s interpretation of the law. “ The plain intent of the testator must control when it does not run counter to established law or public policy. Evidently the testator believed that, when he burned the codicil of February third, he revived the 4th and 5th codicils and left the disposition of his estate at that time as provided in his will and the nine codicils, and such was his intent. This intent is not only shown by the circumstances, but is disclosed by the undisputed declarations of the testator at the time he burned the codicil. It is true that such declarations are inadmissible to aid the interpretation of the provisions of the will. If admitted for such purpose they might tend to overthrow the words of the written instrument and oral declarations cannot be authenticated in the manner required for a valid testamentary disposition of property. (Wigm. Ev., § 2471.) But the declarations are admissible to show intent, motive or plan, if they are statements ‘ of a present existing state of mind ’ accompanying the act in question and ‘ appear to have been made in a natural manner and not under circumstances of suspicion ’. The intention or plan in mind can generally be shown by some act or speech only and, when the person is dead, evidence thereof is often not only the best but the only evidence of what was in his mind at the time. (Wigm. Ev., § 1725; Commonwealth v. Trefethen, 157 Mass. 180, 185.) A design to do or not to do a specific act is always relevant to show that the act named was or was not done. (Wigm. Ev., § 1735.) Under our statute (supra) these declarations were not sufficient to show that the revoked codicils were revived. They are relevant to show the intent with which the revocation of the burned codicil was made. It is said in Matter of Kennedy (167 N. Y. 163, 173): *409 ‘ The general rule is that where an act is done, to which it is necessary or important to ascribe a motive or a cause, what was said by the actor at the time, from which the motive or the cause may be collected, is part of the res gestee and may be given in evidence.’ ” (Matter of Cable, 213 App. Div. 512, 515-516.)
The question of intent is paramount. To succeed, petitioners must prove a desire to revoke the 1938 will, a desire to republish the 1932 will and a subsequent intent to revoke the latter instrument. This they do by a parlay of presumptions, unsupported by either known facts or logical implications. Here we have no physical destruction of the papers, neither is there any “ other writing of the testator, declaring such revocation” as required by section 34 of the Decedent Estate Law. We must look to the circumstances of the preparation and execution of the 1949 codicil to discover the purpose of the testatrix. The law demands rather than prohibits such an examination. A reference to a prior will in a codicil is not sufficient in itself to effect republication. Matter of Campbell (35 Misc. 572, affd. 67 App. Div. 627, affd. 170 N. Y. 84) relied upon by petitioners, is no authority for a contrary rule. In that case the codicil specifically referred to the prior will which had been revoked. Nevertheless, the Surrogate received and set forth in his opinion extrinsic evidence which indicated clearly that the testatrix had the earlier revoked will before her and intended to republish it. Affirming the judgment of the Surrogate, the Court of Appeals placed its seal of approval upon the reception of extrinsic parol evidence for the determination of intent, with the following words (pp. 86-87): “ Of course, there can be no question that the purpose of the testatrix was to re-establish her earlier will; for the title given to the instrument, its subject-matter and the circumstances of its preparation, with the will before her, clearly indicate it. Equally clear, too, should it be that the testatrix purposed the abandonment of her second will.” Petitioners here cite the result of the Campbell case, but ask that its rationale be rejected.
If the Campbell case left any doubt as to the rule, it was resolved by the Court of Appeals in Matter of Smith (254 N. Y. 283). This case involved the question of whether or not a will containing a clause reading ‘1 hereby revoking all former wills by me made ” (p. 286) had the effect of revoking a prior will. The court admitted extrinsic evidence and held that the prior will was not revoked. It was there said (p. 289): “It is the modern rule that 1 with the exception of direct statements of intention, no extrinsic fact relevant to any legitimate question *410 arising in the interpretation of writings and admissible under the general rules of evidence ’ can be shut out. (Thayer’s Preliminary Treatise on Evidence, 445; Wigmore on Evidence, vol. 5, § 2470; Matter of Neil, 238 N. Y. 138; Dobbins v. Pratt Chuck Co., 242 N". Y. 106.) ” If the court is correct in assuming that the Campbell and Smith cases are still good law, a Surrogate is not required to function in a vacuum, but may inquire into all of the circumstances surrounding the preparation and execution of a testamentary instrument. The burden is upon petitioners to show by the greater weight of evidence that Mrs. Poulds intended to revive her 1932 will and to revoke her 1938 will. The testimony taken over a period of three days indicates that they have failed to sustain that burden. A careful reading of the record leads inevitably to the same conclusion arrived at by Lord Peitzaitce, when faced with a similar problem in Goods of Steele (1868) (L. R 1 P. & D. 575). While it is undoubtedly true that English cases may not be cited to prove a rule in American courts, where statutes differ, his Lordship’s logical interpretation of evidence is worthy of note. He wrote (pp. 579-580):
“ It may in the outset, I think, be doubted whether any testator who bore in mind that he had revoked his will, and substituted another for it, ever really sat down with the purpose of revoking his last will and reviving the former one, and set about the execution of that purpose by simply making a codicil referring by date to his first will without more. Would any lawyer advise such a course, or would any unskilled testator imagine he could achieve the end by such a method? The leading idea of revoking the one and reviving the other in its place would surely find expression by some form of words in a paper designed mainly for that object. On the other hand, I conceive that, in the vast majority of cases, when a man declares his intention that a particular paper, varying his previous dispositions, shall be taken as a codicil to ‘ his last will and testament,’ he means that which really is his last will and testament, his then existing will, and the dispositions of his property then in force. In like manner, when he goes on to declare, in the common language of codicils, that ‘ in all other respects he ratifies and confirms his last will and testament, ’ he really means to confirm that which exists, and not to bring to life a paper which has ceased to be testamentary or revive dispositions which have no existence, and are therefore not, properly speaking, capable of being ratified.
11 That these conclusions are just in the main is amply proved by the fact that, whenever full light has been cast on the testa *411 tor’s real purpose by means of parol evidence, the reference to the earlier will has in most oases turned out to be nothing but a blunder * * * Sometimes the error arises from the attorney or a clerk who has laid his hand on the wrong paper; sometimes from the testator who has kept his first will in his own possession and forgotten his second, which he has left in the hand of his attorney; oftentimes from the employment of an attorney to draw the codicil, who has made an earlier will, and has been in ignorance that an intermediate will has been made. I am, therefore, of opinion that the Court ought to be slow to conclude that a testator has manifested in this indirect way a desire to revoke his last will, and that it should scrutinize narrowly the language of a codicil which is said to show such an intention, lest in the desire to follow the testator’s wishes too blindly it should set them at nought altogether. ’ ’
The court, having found that Mrs. Foulds never intended to revoke the 1938 will, nor to revive the 1932 will, is justified in disregarding all references in the 1949 codicil to the 1932 will. The principle of excision has been approved by the courts on many occasions. ‘ ‘ Every suggestion of righteousness and good sense makes for the avoidance of a portion of a will which for any reason is found not to have been within the actual purpose of the testator. There would be a failure of justice if the same considerations which would clearly require the entire denial of probate should be helpless in the face of an equal wrong entirely limited to a single feature of the will.” (Matter of Maguire, 105 Misc. 433, 435-436; see, also, Matter of Buechner, 226 N. Y. 440; Matter of Smith, 254 N .Y. 283, supra; Matter of Miller, 110 N. Y. S. 2d 228; Matter of Grube, 7 N. Y. S. 2d 794; Matter of Purdy, 20 N. Y. S. 307; 1 Jarman, Wills [6th Amer. ed.], p. 170; 1 Williams, Executors and Administrators [7th Amer. ed.], p. 215.) The Smith, Miller and Purdy cases are directly in point since in each of these the excised words were revocation clauses which the court found by parol evidence to be contrary to the testator’s intent and of no effect.
Irrespective of the theory of excision, the 1949 codicil is entitled to probate as an independent testamentary instrument appointing an executor.
“ A codicil may modify the provisions of a will or supersede them entirely, or simply add to the disposition by introducing new beneficiaries. A validly executed will may have been lost and be incapable of proof, and yet the codicil, so far as it goes, is operative. (Newcomb v. Wehster, 113 N. Y. 191.) A codicil executed according to the formalities of the statute is a final testamentary disposition, and if there be an existent and com *412 píete will, it takes it up and incorporates it. (Matter of Campbell, 170 N. Y. 84.) If, however, there be no such existent and validly executed will, and if the codicil be so complete in itself as to be capable of execution, then it must necessarily stand and be given the force of valid testamentary disposition.
“ The codicil in question, so far as it goes, is entirely complete. The carrying out of its provisions in no sense depends upon the will to which it attempts to refer. It simply carves out of the estate a legacy and bequeaths it to an individual capable of taking. Besides, the instrument appoints executors of the testator’s estate. If it contained no other provision, this would alone entitle' it to probate. ’ (Matter of Davis, 105 App. Div. 221; 182 N. Y. 468.) ” (Matter of Emmons, 110 App. Div. 701, 704-705; see, also, Matter of Traversi, 189 Misc. 251.)
Furthermore, it is the law that two separate wills may be construed together and both admitted to probate. (Matter of Cunnion, 201 N. Y. 123; Matter of Smith, supra.)
While the court finds that the petitioners are in default and not properly in court, the decision to deny the petition is based primarily upon the proposition that they have failed to show a reasonable probability of success, were the decree to be vacated. As Surrogate Delehanty said in Matter of Jones (155 Misc. 49, 52-53): “ The court is not willing to establish a precedent that its processes may be used to establish merely a nuisance status which will permit a litigant to put his wares upon the counter and ask to be paid a price for taking them out of the market. The showing of merits here made by petitioner does not suffice to invoke the power of the court to open its decree.”
Other cases so holding are legion. In the absence of fraud, which the court does not find, a defect in the citation, and/or an insufficiency of evidence on the original probate, are not enough. On all the evidence now before the court, it must appear that petitioners have substantial grounds for proving intestacy. Such grounds the court is unable to find, either as matter of law or of fact. As the Third Department said in Matter of Cable (213 App. Div. 512, 517, supra): “Of this testator’s intention there can be no doubt; this plain intention, no law or statute forbidding it, we conclude should be made effective. We find no sufficient reason for denying him his will.” The petition is denied.